EXECUTORS OF R. OLIVER, *vs.* PALMER AND HAMILTON— *June* 1840.

It is for this tribunal, and not for the inferior court, to determine whether, in any given case, an appeal lies.

Under the act of 1826, ch. 200, section 14, all appeals from decrees of the Court of Chancery, shall be prosecuted within nine months from the time of making such decrees, *unless it shall be alleged on oath or affirmation, that such decree was obtained by fraud or mistake.*

The law does not require that the fraud or mistake shall be proved, nor is it a subject of controversy between the parties. Neither is it necessary to entitle a party to appeal under this act of Assembly, after the expiration of the nine months, that the grounds or nature of the fraud or mistake should be stated. If it be alleged on oath, that the decree was obtained by fraud or mistake, it is sufficient to warrant the appeal after the nine months—and the law being silent in relation to the person who is to make the oath, it may be made by any person having knowledge upon the subject.

The appeal need not be entered on the first moment of the discovery, a just construction of the act allowing the same time to appeal, after the discovery of the fraud or mistake, as is given all other persons under the law.

A bill or petition may be filed to vacate the enrolment of a decree alleged to have been obtained by surprise, and to let in the defendant to answer, and from the order of the Chancellor refusing the application in either form, an appeal may be taken to this court.

The act of 1820, ch. 161, gives to the party not appearing, or appearing and not answering, the right before final decree, under circumstances, to file his answer; but the Legislature did not design to say, that no case could be presented in which the party would be let in to answer after decree.

APPEAL from the Court of Chancery.

Motion to dismiss the appeal by the appellees.

The bill in this cause was originally filed in *Baltimore* county court, as a court of equity, on the 9th *August* 1837, by the appellees, against the appellants. Its object was to recover payment of an order of the 18th June 1821, of *Lemuel Taylor* on *Robert* and *John Oliver*, in favor of the appellees, under the circumstances alleged in the pleadings. The defendants were returned summoned to the September term 1837, of that court; and not appearing, the complainants, on the 15th November 1838, obtained a decree, declaring they were entitled to some relief, and an order for a commission to take proof in support of the allegations of the bill. A commission was issued—proof taken and returned on the 28th December 1838; on the same day, at the suggestion of the complainants, the cause was removed from *Baltimore* county court to the Court of Chancery. On the 8th January 1839, the Chancery Court referred the cause to the Auditor of that court, who on the 25th of the same month, reported various accounts to the court, one awarding the complainants the sum of $17,578.33. To this account the complainants excepted. But on the 8th February 1839, the Chancellor (BLAND,) overruled the exceptions; ratified it and decreed, that the appellants should pay the sum above mentioned, or bring the same into court, &c. Nothing further appears to have been done in the cause, until the 23rd November 1839, when the defendants filed their petition, alleging a variety of facts, praying that the enrolment of the final decree of the 8th February 1839, might be opened; that they might be allowed to file their answer to the original bill; and that such further proceedings might be had, as may be ne—

cessary to insure a trial of the merits of the cause, and for other relief. This petition was answered by the appellees, accompanied with various exhibits and depositions. On the the 17th March 1840, the Chancellor, upon petition of the appellants, ordered their petition and answer to stand for hearing, on the 24th April 1840, and gave the parties the usual leave to take proof. This petition, &c., coming on to be heard, on the 7th May 1840, was dismissed by the Chancellor with all proceedings under it, he being of opinion, that on the 23rd November 1839, when the application was made, the decree could not be opened on a mere petition for that purpose; but waiving all objection to the form of the proceeding by petition, no sufficient cause had been shewn for opening or vacating the record of the decree of 8th February 1839.

On the 19th May 1840, the appellants filed the following petition—

*To the Honorable* THEODORICK BLAND,

*Chancellor of the State of Maryland:*

The petition of *Robert M. Gibbs, Charles Oliver* and *Thomas Oliver,* the defendants to this cause, that by a decree passed in the cause on the 8th day of February 1839, they were required to pay unto the complainants the sum, &c.; that the said decree was obtained in the cause by mistake, which was not discovered by your petitioners, until after the time appointed for regularly taking an appeal therefrom, as they will be prepared to show, according to the form of the act of Assembly; they therefore pray, that they might be permitted now to appeal from said decree to the Court of Appeals, &c.

To this petition were annexed the depositions of *Jonathan Meredith, Esq.,* one of the solicitors of the defendants, and of *Thomas Oliver, that the decree within mentioned was obtained through mistake.*

A prayer for an appeal was also entered upon the record; and the defendants by their solicitor, filed an order directed to the Register of the court, to enter an appeal on behalf of the defendants, from the final decree in this cause, and also

from the order whereby the defendants petition to open the enrolment of the decree is dismissed.

At this term the appellees moved to dismiss the appeal, as well from the final decree of the 8th February 1839, as from the order of the 7th May 1840.

The motion was argued before STEPHEN, ARCHER, CHAMBERS, and SPENCE, J.

By NICOLS, DULANY and W. SCHLEY, for the appellees.

In support of their motion to dismiss the appeal from the decree of 8th February 1839, they insisted—

1. That the said appeal was not brought up to this court, until after the lapse of more than fifteen months from the time of making said decree.

2. That the said appeal was not made or entered in the Court of Chancery, until after the lapse of more than fifteen months from the time of making said decree.

3. That there is no sufficient allegation, on oath or affirmation, that said decree was obtained by fraud, or through mistake, to entitle the appellants to maintain this appeal therefrom.

4. That the allegation of mistake, made by the appellants in their petition to the Chancellor, filed on the 19th of May 1840, is defective, informal and insufficient; and is but the assertion by the petitioners of their opinion and conclusion upon a state of case, not disclosed in their petition; and without any explanation of the grounds on which such opinion and conclusion were formed, without any specification of the supposed mistake, and without even a suggestion of the nature of such supposed mistake, or its probable effect in the cause.

5. That the said petition of the 19th May 1840, is not on the oath of all the said petitioners, nor is any reason given, or cause shewn, why the same is not on the oath or affirmation of all the said petitioners, whereas, nevertheless, all have concurred in the present appeal.

6. That the appeal, not being made and entered in the

Court of Chancery, within nine months from the time of making the said decree, could not be made and entered in said court, nor prosecuted in this, except upon allowance thereof, by an order of the Court of Chancery, upon the ground, that the same was obtained by fraud or through mistake; whereas no such order of the Court of Chancery was passed, and made to allow an appeal from said decree.

7. That even if the appellants are to be considered as entitled to appeal, after the lapse of nine months from the time of making said decree, or the allegation that the same "was obtained through mistake," and that such mistake was not discovered until after the expiration of nine months from the time of making said decree; yet the appellants were bound to exercise such right without unnecessary delay, and upon the very first opportunity. Whereas from the affidavit of *Mr. Meredith*, endorsed on the petition to the Chancellor, filed on the 19th May 1840, it appears that the alleged mistake was known at least as early as the 21st November 1839, and that said petition was then prepared; and yet, although a term of this court has since elapsed, no cause is shewn, nor any reason assigned, why the said petition was not sooner filed, and the appeal brought up to the last December term of this court.

8. That the appellants, after the discovery of the alleged mistake, having elected to apply to the Court of Chancery for relief, touching the said decree, are bound and concluded, upon the hearing of this motion, by the decision of said court upon any allegations of facts respecting said alleged mistake; and further, that by such election of remedy, by application to the Court of Chancery, and the proceedings thereon had, the appellants waived and abandoned the right, if any, which they might otherwise have claimed, to insist on such alleged mistake as a ground to maintain an appeal for said decree.

9. That inasmuch as the appellants were in default, in failing to appear and answer, and the said decree was obtained in virtue of the provisions of the act of 1820, chapter 161, the defendants have no right to seek a reversal thereof, by appeal, in the mode now attempted.

And upon the motion to dismiss the appeal from the order of 7th May 1840, the appellees further insisted—

10. That the refusal of the Chancellor to open the enrolment of the decree of 8th February 1839, declared in his said order of 7th May 1840, did not decide any matter of right between the parties; and that the same is not a decision, order or decree, from which an appeal will lie to this court.

ALEXANDER, McMAHON and R. JOHNSON for the appellants insisted—

1. That the appeal from the final decree of the 8th February 1839, is properly taken. The prayer for an appeal being sustained by the affidavit of one of the appellants, that the decree was entered by *mistake.*

2. That the circumstances of mistake, are not required to be set out in the affidavit, or in any manner shewn to the court; but if this position should be ruled against them, they will insist, that their petition to vacate the enrolment of the decree, fully proves the existence of mistake on the part of the appellants in reference to the entry of said decree.

3. That an appeal will lie from the order dismissing their petition, to vacate the enrolment of the decree. In support of this position they will contend, that the petition is the appropriate form of proceeding, to attain the relief which was sought, and that the error dismissing their petition, being passed in fact upon the merits, precludes them from all relief by any form of proceeding, against the irregularity and surprise, of which they complain in their petition.

ARCHER, J., delivered the opinion of the court.

Two appeals have been taken in this case, one from the final decree of 8th February 1839, and the other from the Chancellor's order of 7th May 1840, dismissing the petition of the appellants filed on the 23rd November 1839, which appeals were entered on the 19th May 1840.

Motions have been made to dismiss these appeals. The appeal from the final decree it is insisted, is made at too late a period, and that no appeal will lie from the order dismissing

the appellants' petition, for reasons which will be hereafter adverted to.

First, as to the final decree. By the act of 1826, ch. 200, sec. 14, all appeals from decrees of the Court of Chancery, shall be prosecuted within nine months from the time of making such decrees, and not afterwards, *"unless it shall be alleged on oath or affirmation, that such decree was obtained by fraud or mistake."* This appeal having been taken more than nine months after the decree, the question has been raised, whether under this clause of the act, the appellants are now properly in this court, to prosecute their appeal.

On the 19th May 1840, the appellants filed in Chancery a petition, alleging, that the decree was obtained by mistake, which was accompanied by the affidavits of *Jonathan Meredith, Esq.*, and *Thomas Oliver*, one of the appellants, that the decree was obtained through mistake. An appeal bond was taken in the usual form, and approved by the Chancellor.

These affidavits are alleged to be insufficient to enable the appellants to prosecute their appeal, because they are but assertions of the parties opinion and conclusion, upon a state of the case not disclosed, and without any explanation of the grounds upon which such opinion and conclusion were founded, without any specification of the supposed mistake, and without even a suggestion of the nature of such supposed mistake, or its probable effect in the cause, and they are further contended to be insufficient, because only *one* of the parties has made the affidavit.

It is for this tribunal, and not for the inferior court to determine, whether in any given case an appeal lies; and it is therefore a question, entirely proper for the consideration of this court, whether the affidavits filed in this case give the parties a right of appeal. *Thompson vs. McKim*, 6 *Harr. & John.* 302.

The act of Assembly is so worded, as to leave no doubt on our minds, as to its true construction. The appeal is to be allowed after nine months, provided it is *alleged* on oath, that it was obtained through fraud or mistake. The act does not

say, provided it *be proved*, but provided it be *alleged*, and the mode of establishing the *allegation, is by an oath*.   The right exists upon the *allegation* and oath, and is not a subject matter of controversy between the parties, unless we do violence to the act of Assembly; for if the oath is to be controverted and denied, and so disallowed, the allegation and oath are discarded, which the Legislature say, shall entitle the party to an appeal.   Appeals are thus limited and restricted, unless there is an allegation and oath, of fraud or mistake.   The abuse from such an exemption, was supposed to be found in the requirement of an oath, that the mistake or fraud existed. The abuses anticipated to arise from this construction of the law, will most probably be found to be imaginary.   After the lapse of twenty-four years since the passage of the law, this is the first case where any party has sought at our hands, the benefit of the law.

Several acts of Assembly have been passed, which in their received construction, have aided us in the interpretation, which we have placed on the clause of the act under consideration. By the act of 1804, ch. 55, sec. 2 and 3, civil causes are authorised to be removed by suggestion in writing, by either of the parties thereto, supported by affidavit or other proper evidence, that a fair and impartial trial cannot be had in the county where such actions are depending; and in criminal prosecutions, the party presented or indicted, might remove upon suggestion without an oath, until by the act of 1805, ch. 65, sec. 49, an oath was required.   The effect of these provisions was to change the jurisdiction, and the ground upon which the change was to be made, was, that "a fair and impartial trial could not be had in the county where the suggestion was made," yet no other evidence has ever been required of this fact, than the oath of the party.   No counter proof is admitted, the oath of the party being sufficient to establish the fact, that a fair and impartial trial *could* not be had, and even the suggestion without oath was sufficient in criminal prosecutions, until modified by the act of 1805, ch. 65, sec. 49. By the act of 1804, ch. 55, sec. 4, the *Attorney General* may

remove by suggestion in writing. It has never been the practice where such suggestion has been made, to require any proof whatever, that a fair and impartial trial could not be had; but the suggestion has been taken as a compliance with the requisitions of the law, and the fact whether a fair and impartial trial could be had, in the county where the suggestion has been made, has never been permitted to be controverted; but the suggestion on oath in the one case, and the suggestion alone in the other, have been always considered as conclusive. It may be further observed, that where the oath of the party *per se*, is not to operate, the Legislature have expressly so declared, and have pointed out the mode of contesting it, as will be seen by reference to the act of 1787, ch. 9, sec. 2 and 3.

In various laws, the Legislature have required *proof* to be taken as a foundation for the court's proceedings, as in the act in relation to attachments of 1715, and the act of 1786, ch. 33, in relation to the marking and bounding of lands. In other laws, they declare the *oath* of the party shall be the foundation of the proceedings, as in the act of 1795, ch. 5. We apprehend, that in the case before us, the Legislature has pointed out the mode of proof, by declaring, that on oath of fraud or mistake, an appeal would lie, and having so done, we are of course bound to concede the right.

It must be remarked, that the law does not say by whom the oath shall be taken. The appellees insist, it must be made by the parties; that where there is more than one party, it must be made by all the parties, who desire to prosecute their appeal. We think, that as the law is silent in relation to the person who is to make the oath, it may be made by any person having knowledge of the fraud or mistake. It would have been unwise to have confined it to the parties, because by so doing, in many cases the design of giving an appeal would have been defeated. Mistakes may be committed, or fraud exist, not known to the parties, but known to other persons. Nor do we consider, that all the parties should make oath, for one of the parties alone may be conversant of the mistake or fraud.

It is again urged, that if the allegation and affidavit are sufficient, still the appeal is taken at too late a period, being nearly six months after the decree was brought to the knowledge of the appellants. But in our apprehension, there has been no want of diligence in prosecuting the appeal, after a knowledge of the existence of the decree. In the case of alleged fraud or mistake, there is no positive limitation in the act, as to the time when the appeal shall be taken, and nothing would justify this court in so limiting this right, that persons intended to be benefitted by it, should on the first moment of the discovery of fraud or mistake, resort to his appeal. A just construction of the act, would allow him the same time to appeal, after the discovery of the fraud or mistake, that all other persons had under the act. In this view of the case, the appeal has not been delayed unreasonably.

The next question presented, is on the right of appeal from the order of the Chancellor, dismissing the appellant's petition, praying under the circumstances therein stated, that the enrolment of the decree of 8th February 1839, might be vacated; that the appellee upon terms might be let in to answer, and for such relief as the case might require.

Upon the merits of this appeal, or whether the Chancellor did right or wrong in dismissing the petition on the present motion, we are not called upon to determine.

The only question we have to decide is, whether an appeal lies from the decision of the Chancellor, dismissing the petition.

There was an interlocutory decree under the act of 1820, in consequence of the failure of the appellants to appear and answer; a commission *ex parte* issued, testimony was taken, and a final decree passed.

The appellants sought by petition, to open the enrolment of decree, and in effect, to vacate the decree; so that they might be permitted to answer and disclose the merits of their case. The decree having been duly enrolled, became a record of the court, and bound the rights of the appellant, and the refusal of the Chancellor to vacate the enrolment and decree,

and to let in the merits on a proper case made, as much affected the rights of the appellant, as a decree opening the enrolment, and vacating the decree would have affected the rights of the appellees. And in the latter case, an appeal has been entertained by this court. The action of the Chancellor, it has been determined by this court, in such cases, is to be regulated by a sound discretion, but unless he exercises that discretion according to law, this court has determined in *Scott vs. Burch,* 1 *Gill & John.* 393, that an appeal will lie from his decision, and in that case reversed the Chancellor's decree. In 4 *Bro. Par. cases,* 456, an appeal was held to lie, from an order refusing, after the enrolment of a decree, to set aside the process of contempt, and a decree obtained on a sequestration, and to receive the answer of the defendant. The House of Lords entertained the appeal, and decreed, that the sequestration should be discharged, the enrolment of the decree vacated, and the decree set aside. In this case it was argued on appeal, as it has been here, that the proper remedy of the party, was by bill of review, but the result proved that the argument was not maintained.

It is said this is a decree upon the merits, and that no case can be found in the *English* books, where the enrolment of a decree has been vacated, and the decree has been set aside, except by bill. In the case in 4 *Bro. Par. Ca.,* 546, the defendant was in contempt for not answering, and the bill was taken *pro confesso.* In the case now before the court, the appellants had never appeared, and instead of the bill being taken *pro confesso,* there was evidence taken *ex parte,* and a decree was passed. In neither case were the merits of the defendant's case developed. In each, the object and design would be the same, to get rid of the decree, that defendant's defence to the merits might be let in. In point of principle, it seems to us difficult to distinguish the cases. Technically it may be true, that in the one case, the decree would be on the merits, and the other not; but in point of fact, in neither case, would the decision be on the merits of the defendant's case, not having filed his answer, or taken his testimony.

Oliver *vs.* Palmer and Hamilton.—1840.

This being a proceeding under our act of Assembly, there are no cases in the *English* books precisely like it, but the cases which bear the strongest affinity to it, are the cases of decrees, *pro confesso.*

Had the design been to set aside the decree for fraud, the remedy would clearly have been by bill of review, and not by petition, and in such a case, had the relief been sought by a wrong mode of proceeding, the decision of the Chancellor would have settled no right; and an appeal would not have laid to this court. But with the precedent before us, we cannot say that an original bill was necessary, nor do we perceive, that a bill of review could have been sustained. Fraud in the obtention of the decree is not alleged. The concealment alleged is subsequent to the decree, and even subsequent to the enrolment. No error is alleged apparent in the body of the decree, nor is there any discovery averred of new matter, which would constitute properly the ground work of a bill of review.

If it be said, that the decree having been enrolled, an original bill although not technically a bill of review, should have been filed to vacate it, the answer we think, will be found in the fact, that bills have not always been resorted to for such a purpose. Thus in 4 *Bro. Par. Cas.* 546, and in 1 *John. Ch.* 541, and in 3 *John. Ch. C.* 424. In the two latter cases, it would appear as though the decrees were enrolled, yet petitions were filed to vacate the decrees, and let in the answers. So in *John. Ch.* 201, a petition to vacate a decree for surprise or irregularity, is considered the proper course; but it is not certain in that case, whether the decree was enrolled. Again, there are other cases in which bills have been filed, as in 1 *Gill & John.* 393. From these cases we are led to the conclusion, that the appellants might have proceeded for the alleged surprise, either by bill or petition.

It is admitted, that an appeal will not, *in general*, lie from an order refusing to re-hear. 2 *Wend.* 226. But this is an application to vacate the enrolment of a decree; to set aside the decree, and to let in the answer, and the merits of the case on

the part of the defendants below, who never appeared, and therefore an essentially different application from that of a re-hearing simply.

The act of 1820, ch. 161, gives to the party not appearing, or appearing and not answering, the right before final decree, under circumstances, to file his answer. But it was not the design of the Legislature to say, that there could be no case presented in which it would be competent for the party after decree, to be let in to answer. The design of the act was certainly to expedite Chancery suits, where they were protracted by the negligence of one of the parties; but it did not design, to give one party advantage over the other, and in all cases to make the decree conclusive in the cause, although his failure to appear or to answer, was not the result of negligence, or where it might have proceeded from a providential cause, as the insanity of the party. Whenever the defendant shall be enabled to present such a case, he would have a right to be let in to develope the merits of his case; and a refusal of the court below to permit him to do so, would in our opinion be error. Whether the appellants have made such a case as would entitle him thus to come in, it is not proper on this appeal that we should say. The motions to dismiss the appeals taken in this case are overruled.

MOTIONS OVERRULED.