BRADLEY T. JOHNSON and WIFE, and WM. J. ROSS, Trustee, *vs.* BARBARA ROBERTSON.

*Right of Appeal in Equity after the expiration of the time prescribed by Law—Right of Trustee to waive or conclude the rights of the cestui que trust in proceedings in Equity—Evidence—Defects in proof not cured by recital in the Decree.*

A decree foreclosing a mortgage was passed April 4th, 1862. On the 31st December, 1867, the mortgagor filed a petition asking permission to take an appeal from the decree. The petition was accompanied by an affidavit of the mortgagor, that the decree had been entered by a mistake which was not discovered until the 30th December, 1867. HELD:

That upon this affidavit the appeal was properly before the Appellate Court, notwithstanding the lapse of time ordinarily prescribed by law for the prosecution of appeals from Courts of Equity.

B. J executed a mortgage on certain property to B. R. He afterwards conveyed the mortgaged premises to R, as trustee for the benefit of J. J, his wife, and with his wife removed from this State, leaving the trustee in the town where the mortgaged property was situated. A bill to foreclose the mortgage being filed, an order of publication was given against the non-residents. R, the trustee, appeared, and by answer "submitted to such decree in the premises as might be right." A decree of foreclosure was passed directing a sale; but giving no day on which R would be allowed to pay the mortgage debt. On an appeal from this decree, HELD:

1st. That although ordinarily the defendant is entitled to have a day given him to bring in the money on a decree for the sale of mortgaged premises, yet being for his benefit he may waive it, if he pleases.

2d. That, in this case, the trustee, who was bound to protect the interest of his *cestui que trust*, having confessed the allegations of the bill by answer, and submitted to such decree as might seem right, had waived the privilege of having a day to bring in the money.

3d. The *cestui que trust* is bound by this act of the trustee, and in the absence of any evidence of injury to the *cestui que trust* or to the trust estate by the act of the trustee, the *cestui que trust* ought not to be allowed to impeach it or ask a reversal of the decree on that account.

4th. The non-resident defendants were necessary parties to the cause, and their rights and interests could not be concluded by a decree passed without notice to them, either by actual service of the process of the Court or after constructive notice by publication as prescribed by law.

5th. The admissions of the trustee, R, in his answer, could not conclude the right of his co-defendants, non-resident, to such notice.

On a bill to foreclose a mortgage, the Court, under date of 2d of October, 1861, ordered that notice be given to the non-resident defendants mentioned in the bill, by publishing a copy of the order "once a week for four successive weeks before the 10th day of November, 1861." The complainant filed, April 4th, 1862, a certificate signed by "S & C," stating that the order of publication had been published "once a week for four successive weeks prior to March, 1862." The certificate bore date April 3, 1863, and had annexed to it a portion of a newspaper containing an advertisement of the order. At the bottom of the advertisement were the letters and figures "Oct. 3, 4t." A decree of foreclosure was passed, reciting that the order had been duly published. On appeal, HELD:

1st. That the certificate standing alone was not sufficient proof of the publication as required by law and prescribed by the Court's order.

2d. The Court cannot know officially the meaning of the printer's marks, "Oct. 3, 4t," at the foot of the advertisement, nor can it give interpretation to them without evidence as to their meaning.

3d. To support the decree of the Court, affirmative proof of the publication of the notice to the non-residents, according to the provisions of the Code, was indispensably required.

4th. The defect of proof is not cured by the recital contained in the decree "that the order of publication had been duly published."

APPEAL from the Circuit Court for Frederick County, in Equity.

On the 31st December, 1855, B. T. Johnson executed a mortgage on a certain house and lot, in the town of Frederick, to Barbara Robertson, and on the 13th May, 1861, he conveyed the mortgaged property to Wm. J. Ross, in trust for Jane C. Johnson, his wife. On the 2d day of October, 1861, Barbara Robertson filed a bill of fore-

closure in the Circuit Court for Frederick County against Johnson and wife, and Ross, trustee, setting out the existence of the mortgage, the conveyance of the mortgaged premises, and praying a subpœna to Ross, then residing in Frederick, and an order of publication as to Johnson and wife, who had removed from the State. The Court, on the same day, passed an order of publication directing the complainant to give notice to the absent defendants, by publishing a copy of the order in a newspaper published in Frederick, "once a week for four weeks before the 10th day of November, 1861, warning them to appear and answer on or before the 1st day of March, 1862."

Ross appeared and answered, "submitting to such decree in the premises as may be right."

A certificate, dated April 3d, 1862, was filed with the papers signed by Smith & Cole stating that the order "was published in the 'Maryland Union,' printed in Frederick, once a week for four successive weeks, prior to the 1st day of March, 1862." No replication was filed to Ross's answer, nor was any testimony taken. On the 4th April, 1862, a decree was entered taking the bill *pro confesso* as to Johnson and wife, and appointing a trustee and ordering the sale of the mortgaged property. No day was given to allow Ross or the mortgagor to pay the mortgage debt.

On the 31st December, 1867, Johnson and wife filed a petition in the Circuit Court for Frederick County, alleging among other things that early in May, 1861, they had left the State of Maryland, that they had remained in the belligerent lines of the Confederate States during the late war, and that the whole proceeding to foreclose the mortgage had taken place during the war, when they could not have had notice; that the decree had been entered by mistake, which they had not discovered until the day before, (December 30th, 1867,) and they prayed to be permitted to appeal from the decree. This petition

was verified by an affidavit, which also alleged that the decree was obtained by mistake.

Thereupon the Court allowed the appeal.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER, ALVEY and ROBINSON, J.

*Bradley T. Johnson* and *John P. Poe,* for the appellants.

The appeal was properly taken, it being alleged under oath that the decree was obtained by mistake. Affidavit of mistake makes the right of appeal absolute, and the Court will not allow the affidavit to be inquired into or controverted. It is like an affidavit for the removal of a cause. *Code, Art.* 5, *sec.* 30; *Oliver vs. Palmer & Hamilton,* 11 *Gill & Johns.,* 137.

The decree is erroneous upon its face, because no day is allowed to the defendants to pay the mortgage debt before ordering the sale.

The provisions of the Code and the uniform practice in Maryland leave no room for doubt that this objection to the decree is well taken. *David vs. Graham,* 2 *H. & G.,* 94; *Art.* 16, *sec.* 125 *of the Code of Pub. Gen. Laws; Alexander's Ch. Pr.,* 314, (form of decree;) *Barroll's Ch. Pr.,* 391 *and* 392.

Indeed, one of the prayers of the bill is that the defendants or some one of them, might be decreed to pay the mortgage debt, and it is a little remarkable that the draftsman of the decree did not embody in it this measure of the relief which his bill asked.

Such a clause in a decree is not form merely—it is substance—and its omission is ample reason for a reversal.

The defendants, Johnson and wife, were not either actually or constructively in Court, and the decree is consequently void.

That they had actual notice of the institution of the suit against them, or of the subsequent proceedings which

culminated in a sale of their property at less than half of its value, is not pretended—and hence if they are to be held bound by these proceedings, it can only be upon the grounds:

1st. That they were *constructively* in Court by virtue of the alleged publication in the newspaper, sufficiently proved to have been made; or,

2d. If it be admitted that there is no sufficient proof of such publication, still they are bound by the answer and admissions of Mr. Ross, their co-defendant and the trustee of Mrs. Johnson.

As to the sufficiency of the proof of notice to the non-residents:

No significance can be attached as evidence to the recital in the decree that the order of publication had been duly published—for otherwise there would be no occasion for any proof of notice whatsoever—nor any necessity for the inquiry whether there was in the record such proof—nor any need of a reargument. *Harris vs. Hardeman*, 14 *Howard*, 339–344, and cases there cited.

Discarding, as clearly out of the case, the recital in the decree, there is nothing to look at but the certificate of Smith & Cole, taken in connection with the printed slip annexed to it. The certificate by itself, conceding that without oath it is admissible at all, shows a publication *once a week for four successive weeks prior to the 1st day of March*, 1862, while the order required a publication for four weeks *prior to the 10th day of November*, 1861. Unquestionably, four weeks prior to the 1st day of March, 1862, *might* have been four weeks prior to the 10th day of November, 1861.

But certainly it does not, by this certificate, plainly, affirmatively, and necessarily appear, as it undoubtedly should do, that the notice was published for four weeks prior to the 10th day of November, 1861.

The printed slip annexed to the printers' certificate does

not change the aspect of the case. At the foot of it are the letters and figures, " Oct. 3, 4t." These undoubtedly have some meaning; whether unexplained by evidence making that meaning plain, they can be judicially construed, and by judicial guesswork be made the foundation for a decree by which valuable rights are rendered valueless, may admit of serious question.

It is conjecture and assumption after all, in a matter where nothing but affirmative proof will answer, that the four weeks were immediately prior to 10th November, 1861, and not to 1st March, 1862, when the certificate, naturally and ordinarily construed, implies that the publication was next prior only to the latter date. *Delogny vs. Smith*, 3 *Louisiana*, 423; *Bussey vs. Leavitt*, 12 *Maine*, (3 *Fairfield*,) 380–381.

In proceedings of such a character as this, the fact of notice must indisputably appear upon the face of the record. *Rex vs. Croke, Cowper*, 26; *Blackwell on Tax Titles*, 213.

No presumption can be indulged in for the purpose of supplying the omission of proof in relation to the publication of the advertisement. *Blackwell on Tax Titles*, 249; *Allen vs. Smith*, 1 *Leigh*, 231; *Mims vs. Mims*, 3 *J. J. Marsh.*, 105; *Hill vs. Hoover*, 5 *Wisconsin*, 362, 363 and 371; 2 *Barbour's Ch. Pr.*, 706; *Denning vs. Corwin*, 11 *Wendell*, 652, 653; *Cook vs. Farren*, 34 *Barbour*, 95, 96; *Ramson vs. Williams*, 2 *Wallace*, 318–19; 1 *Smith's Leading Cases—notes to Crepps vs. Durden*, 991, 1011, 1026; *McMinn vs. Whelan*, 27 *Cal.*, 300; *People vs. Huber*, 20 *Cal.*, 81; *Ricketson vs. Richardson*, 26 *Cal.*, 149; *Kendall vs. Washburn*, 14 *Howard Pr.*, 380.

As to the power of the trustee to bind his *cestui que trust* by his admissions and answer:

All the books declare that where a mortgagor conveys the mortgaged property to a trustee, both the trustee and the *cestui que trust* must be made parties defendant to

any bill to foreclose, and especially to sell the mortgaged premises. *Story's Eq. Pl.*, sec. 193–2; *also sec.* 207; *Holland vs. Baker*, 3 *Hare*, 69; *Browne vs. Blount*, 2 *Rus. & Myl.*, 83; *Giffard vs. Hort*, 1 *Sch. & Lef.*, 386.

And in Maryland where the *cestui que trust* is a *feme covert*, the practice is to make the husband a party also—a practice which is founded upon the most substantial reasons. *Story's Eq. Pl.*, sec. 63, *note* 1; 1 *Fonblanque Eq. B.* 1, *ch.* 2, sec. 6, *note p* ; *Adams' Eq.*, side *p.* 313 *and note* 1.

The trustee was in no sense her agent. *Hill on Trustees*, side *p.* 316–318. He was not authorized to speak for her, nor to admit away her rights. *Holland vs. Baker*, 3 *Hare*, 69; *Oliver vs. Piatt*, 3 *Howard*, 407.

The admissions by which it is suggested she is bound, are not admissions proved to have been made by him in the discharge of his duties as trustee, but are contained in his answer as co-defendant of the non-residents. Now, according to the well-established chancery practice, his answer cannot be used against them or either of them. *Powles vs. Dilley*, 9 *Gill*, 222; *Jones vs. Hardesty*, 10 *G. & J.*, 415.

*Jos. M. Palmer*, for the appellee.

It is admitted that the appeal was legally taken under the Act of 1826, ch. 200, sec. 14. The affidavit was sufficient to justify it, and for that purpose only it was filed. The facts stated in the affidavit cannot be read or used in the argument of this case for any other purpose.

The case will be considered and decided by this Court upon the facts and proceedings in the Court below, and upon the points and questions of law, which appear in the record. No facts *dehors* the record, can be considered by the Court in this case. If there be no error appearing upon the face of the record, the judgment must be affirmed. The law and the practice on this subject, was fully settled in the case of *Oliver vs. Palmer and Hamilton*, 11 *G. & J.*,

140 *and* 428; *Code, Art.* 5, *sec.* 12; *Act of* 1825, *ch.* 117, *sec.* 2.

The *pro confesso* decree was legally and properly passed by the Court below, a copy of the order of publication, &c., having been duly published according to the terms of the original order. The order and notice to non-resident defendants is regulated by Art. 16 of the Code, secs. 88–98.

The question is, *did* the Court below comply with the provisions of the law?

A compliance with the provisions of this law, gave the Court jurisdiction over the persons of the non-residents. The 88th to 98th sections of Art. 16, of the Code provides, that in suits in Chancery, by bill, &c., against non-residents, the Court may order notice to be given by publication to be printed in one or more newspapers, stating the substance and object of the bill, &c., and warning such parties to appear on or before the day fixed in such order, and show cause why the relief prayed should not be granted; and such notice shall be published as the Court may direct. Not less, however, than once a week for four successive weeks, three months before the day fixed by such order for the appearance of the non-residents, and if such non-residents shall not appear at the time stated in such notice, the bill or petition may be taken "*pro confesso*," or a commission to take testimony may be issued *ex parte*, &c.

The certificate of Smith & Cole, the printers of the newspaper called "The Maryland Union," states that the annexed order of publication was published in "The Maryland Union," printed in Frederick, once a week for four successive weeks, prior to the 1st day of March, 1862, instead of saying before the 10th day of November, 1861. To this certificate of the printers, is annexed the printed copy of the order of publication, as printed and now on file in the case, which clearly shows that the first

insertion of the copy of said order in the "Maryland Union," was on the 3d day of October, 1861, the day after the order was passed by the Court below, which was more than four weeks before the 10th day of November, 1861.

It would, indeed, be passing strange, that if the Circuit Court as a Court of Chancery, should pass a *pro confesso* decree, stating in the decree that the order of publication notifying the absent defendants, &c., had been published in due form, that it would be error, and the decree declared to be null and void, unless it clearly appeared affirmatively from the record, that the Court was mistaken as to the facts upon which it decided. That is not this case. The decree of the Court below is entitled to every legal intendment in its favor; unless it can be clearly shown by the record that it is erroneous. *Parrish vs. The State*, 14 *Md.*, 238.

Upon a decree *pro confesso*, it is an established principle, that the allegations of the bill are to be received as true, as to those parties against whom the decree passed. All the facts in the case are admitted by the defendants. *Robinson vs. Townshend*, 3 *G. & J.*, 413; *Lucket vs. White*, 10 *G. & J.*, 489.

The decree of the 4th of April, 1862, is a good, legal and valid decree against Mr. Ross and Mrs. Johnson, two of the defendants, and the only parties in the defence having any interest or right to the property in dispute, or who could in any way be affected by the decree.

If the *cestui que trust* be not bound by the *bonâ fide* acts of the trustee in the management of the trust property, the appointment of a trustee would be a mere farce. 2 *Story's Equity*, secs. 1269, 1270, 1272, 1273, 1275, 1276, 1278; *Manning vs. Manning*, 1 *John Ch. R.*, 527.

Mr. Johnson has no right or interest in the matter which can in any way be affected by the decree: for his wife, as regards this trust property, is a *feme sole*, to all

intents and purposes.   *Husbands vs. Cook,* 11 *Md.,* 492; *Koontz vs. Nabb,* 16 *Md.,* 549.

BARTOL, C. J., delivered the opinion of the Court.

The decree from which this appeal was taken, was passed on the 4th day of April, 1862.   On the 31st day of December, 1867, the appellants, Johnson and wife, filed their petition in the Circuit Court, alleging that the decree was obtained by mistake, which was not discovered by them until the day before the filing of the petition, and praying to be permitted to appeal.   The facts alleged in the petition were verified by the oath of B. T. Johnson.

Upon this affidavit, under the ruling in *Oliver vs. Palmer & Hamilton,* 11 *G. & J.,* 137, and *Herbert vs. Rowles,* 30 *Md.,* 271, the appeal is properly before us, notwithstanding the lapse of time ordinarily prescribed by law for the prosecution of appeals from Courts of Equity.   1 *Code, Art.* 5, *sec.* 20.

In the body of the petition, among other things it is alleged that the petitioners, " being within the belligerent lines of the Confederacy, and adhering to that side in the late civil war, no process or notice in fact was ever served on them, nor could it have been served, the bill having been filed, all the proceedings had, and decree entered, sale made and proceeds distributed, after war had commenced and before it ended, during all which period all communication between the persons in Maryland and those in Virginia, within the Confederate lines, was prohibited by law."

Upon this statement of facts, it has been argued by the appellants, that the right of the appellee to enforce her mortgage was suspended by reason of the appellants, Johnson and wife, having been alien enemies when the suit was instituted, and having so continued during the progress of the proceedings, and until after the passing of the decree.   If this question were properly before us on

the present appeal, it would be set at rest by the decisions pronounced by this Court at the last term, in the several appeals of John T. B. Dorsey against Kyle and others and against John T. W. Dorsey. In those cases it was held upon full argument and consideration, that the creditors of a party who is an alien enemy, may have the same remedy against his property, remaining within the jurisdiction of the State, as they could have against the property of any other non-resident debtor.

This question, however, is not properly presented by this appeal, and could not be raised by averments in the petition. The office of the petition and affidavit is simply to remove the objection growing out of the lapse of time since the decree, and to entitle the apellants to have the proceedings of the Circuit Court reviewed, in the same manner as if the appeal had been prosecuted within the nine months prescribed by law.

In disposing of the appeal, our attention must be confined to an examination of the proceedings as they appear upon the record, without reference to the new matter set out in the petition.

The questions arising upon the record are few and may be briefly disposed of.

The bill was filed on the 2d day of October, 1861, by the appellee, to enforce the payment of a mortgage of a house and lot in Frederick, executed and delivered to her by Bradley T. Johnson to secure $2000, being for balance of purchase-money due to her for the property. The mortgage debt was alleged to be due, and interest thereon from April 1st, 1861. On the 13th day of May, 1861, Johnson had conveyed the mortgaged property, together with certain other property, to William J. Ross, in trust for the benefit of his wife. The bill prayed for an order of publication against Johnson and wife, who were non-residents of Maryland, and for subpœna against Ross. The defendant, Ross, appeared, and by his answer ad-

mitted the truth of the matters charged in the bill, and "submitted to such decree as might be right." An order of publication against the non-residents was passed in the usual form, and upon the filing of a certificate setting forth that the same had been published in the manner to be hereinafter more particularly mentioned, the Court, on the 4th day of April, 1862, passed a decree, *pro confesso*, against the absent defendants, and directed the mortgaged property to be sold to pay the mortgage debt.

The appellants claim a reversal of the decree upon two grounds:

1st. Because the decree directed the sale without fixing a time within which the defendants might pay the mortgage debt and costs.

2d. Because there is no sufficient proof of the publication of the notice to non-residents as prescribed by the Court's order, and required by law.

The first ground of objection to the decree is based on sec. 125, Art. 16 of the Code. In *David vs. Grahame*, 2 *H. & G.*, 94, this Court in construing the third section of the Act of 1785, ch. 72, which is similar to sec. 125, Art. 16 of the Code said, "that although ordinarily the defendant is entitled to have a day given him to bring in the money on a decree for the sale of mortgaged premises, yet being for his benefit, he may waive it, if he pleases."

And in that case, the answer having confessed the complainant's claim, and consented to a sale for the payment of it, on such terms as to the Court should appear equitable, it was held that the privilege in question was waived. So here the defendant, Ross, to whom the equity of redemption had been conveyed, and who held the same in trust for Mrs. Johnson, and who was bound to protect her interest; having, by his answer, admitted the truth of the matters alleged in the bill, and consented to the passage of such decree in the premises, as to the Court might seem

right, has waived the privilege secured by the 125th section of the Code.

To this extent, we think he had the power to represent the interests of his *cestui que trust*, and she is bound by his act; and in the absence of any evidence of injury to her, or to the trust estate by his act, she ought not to be allowed to impeach it, or ask a reversal of the decree on that account.

2d. Is there sufficient proof of the publication of notice to non-resident defendants.

The Code, Art. 16, secs. 88 and 98, prescribes the kind of notice required, and the mode and time of giving it.

The ninety-eighth section provides, that "the Court may order notice to be given by publication, in one or more newspapers, stating the substance and object of the bill or petition, and warning such party to appear on or before the day fixed in such order, and show cause why the relief prayed should not be granted, and such notice shall be published as the Court may direct, *not less, however, than once a week, for four successive weeks, three months before the day fixed by such order for the appearance of the party.*"

In this case, the Court's order was passed, in conformity therewith, requiring the same to be "inserted in some newspaper published in Frederick, once a week for four successive weeks, before the 10th day of November, 1861," and fixing the time for appearance of the parties on the 1st day of March, 1862.

The proof of publication, as it appears in the record, is as follows:

"OFFICE OF THE MARYLAND UNION,
"FREDERICK CITY, MD., April 3d, 1862.

"This is to certify that the annexed order of publication, and notice to absent defendants in No. 3002 Equity, was published in the 'Maryland Union,' printed in Frederick, once a week for four successive weeks, prior to the 1st day of March, 1862.                    SMITH & COLE."

Clearly, this certificate standing alone, is not sufficient proof of the publication as required by law, and prescribed by the Court's order.  This required the notice to be published for the period prescribed, before the 1st day of November, 1861.

The certificate states that it was so published before the 1st day of March, 1862, the day fixed for the appearance of the parties, while the Code requires the publication to be completed *three months before that day.*

By the agreement of the solicitors, the original certificate has been produced as a part of the record.  That, however, does not differ from the copy appearing in the record, except that it has affixed to it a part of the newspaper, containing the Court's order and notice.

At the bottom of the printed slip are the following letters and figures: " Oct. 3, 4t," which the counsel for the appellee has contended supplies the defect of the certificate, and proves that the publication was made according to the Court's order.  In support of this argument, it has been said that these marks mean " October 3d, four times," showing the date of the first insertion to be the 3d of October, and we are asked so to interpret them, and to infer that the publication was made during the four successive weeks next, after the 3d of October, 1861.

But we are not at liberty to make any such inference in the absence of further proof on the subject.  This Court cannot know officially the meaning of the printers' marks at the foot of the advertisement.  They most probably indicate merely the directions placed upon the advertisement in the printing office, when it went into the compositor's hands, to indicate when and how often it was intended to be published, and cannot show that it was in fact so published.  The certificate in plain terms states that the publication was made prior to the 1st day of March, 1862; this language is susceptible of but one interpretation, and cannot be construed to mean  that it was made before the

10th day of November, 1861, as required by the Court's order.

To support the decree of the Circuit Court, affirmative proof of the publication of the notice to non-residents, according to the provisions of the Code, was indispensably required. This proof is not furnished, either by the terms of the certificate or by the printed advertisement annexed thereto.

It has been contended, on the part of the appellee, that this defect of proof is cured by the recital contained in the decree, " that the order of publication had been duly published."

In matters which are merely formal, that occur in the progress of a cause, it has been held that the recital of a fact in the body of the decree, in the absence of all direct proof to the contrary, will be taken as sufficient evidence of the truth thereof. Thus in *Rigden vs. Martin*, 6 *H. & J.*, 407, and in *Scott vs. Scott*, 17 *Md.*, 78, the statement in the decree that the cause stood ready for hearing, was held sufficient; and in *Fitzhugh . et al. vs. McPherson*, 9 *G. & J.*, 71, where the decree stated that an order *pro confesso* had been duly served, was considered sufficient evidence of the truth thereof, there being in the record no direct proof to the contrary.

But those cases have no application to the present. Here the alleged error in the decree does not consist in the omission of any mere formal or preliminary proceeding in the cause, such as may be cured by presumption, or shown by a recital in the decree. The objection to the decree involves the question of the power and jurisdiction of the Court. To bind the non-resident defendants, or to conclude their rights in a proceeding like this, the law requires that notice shall be given by publication as prescribed, and the proof that the law has been complied with must appear in the record. *Minis vs. Minis*, 3 *J. J. Marsh.*, 105; *Harris vs. Hardeman*, 14 *Howard*, 339, 340.

The non-resident defendants, Johnson and wife, were necessary parties to the cause, the latter as *cestui que trust* holding the equitable estate in the land subject to the mortgage,—and the former as her husband, she being a *feme covert*, was a necessary and proper party.

Being necessary parties, their interests and rights could not be concluded by a decree passed without notice to them, either by actual service of the process of the Court, or after constructive notice by publication, as prescribed by the Code.

A reference to the authorities has satisfied us that their rights in this behalf are not concluded by the admissions in the answer of Ross, the trustee and co-defendant.

The answer of one co-defendant is not to be received as binding another. *Powles vs. Dilley*, 9 *Gill*, 222 ; *Jones vs. Hardesty*, 10 *G. & J.*, 415. The relation and office of trustee of Mrs. Johnson, held by Ross under the deed, could not authorize him to bind or surrender her rights and interests by his answer. He was not her agent, in the sense in which that term is ordinarily used, entitled to speak for her. *Hill on Trustees*, 316, 318, *m ;* 3 *Hare*, 69 ; 3 *Howard*, 407.

It follows, that if this case were now to be finally determined upon the present state of the record, we should be compelled to reverse the decree of the Circuit Court, as having been passed without authority and jurisdiction for the want of notice to the non-resident defendants. And if reversed for such cause, all rights of the purchaser under the decree would necessarily fall with it; because being passed without jurisdiction it would be void, and no rights to the property could be acquired under it which this Court could protect.

But it having been suggested in argument, that the notice was in fact duly published, and that proof thereof can be supplied, and it being considered equitable that an opportunity should be afforded to supply further proof in

that behalf in support of the decree, this Court, in accordance with the provisions of the Code, Art. 5, sec. 28, will, without reversing or affirming the decree of the Court below, order the cause to be remanded to the Circuit Court, to the end that further evidence may be taken of the publication of the order and notice to non-residents, and that further proceedings may be there had, in accordance with the opinion of this Court.

In case the proof of due publication of the notice shall be supplied, it will be competent for the Circuit Court to pass a decree ratifying and confirming its former decree, and protecting the rights of the purchaser acquired under the sale made and reported in the cause.

And if such proof shall not be supplied, then the cause will stand as if no decree had been passed, and the defendants, Johnson and wife, will be allowed to appear, answer and defend the cause, and further proceedings shall be had therein according to the usual course.

*Cause remanded.*