JOHANNA BAUER *v.* CHARLES HARMAN ET AL.
[No. 33, April Term, 1931.]

132

*Decided June 11th, 1931.*

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Charles G. Baldwin,* for the appellant.

*J. Paul Schmidt,* for the appellee.

PARKE, J., delivered the opinion of the Court.

The decree in the cause on this appeal was passed and entered on October 28th, 1930. The order for the appeal was not given and filed until January 6th, 1931, and a motion has been made to dismiss the appeal because there is a difference of more than two months between the passage of the decree and the appeal. Whether or not this motion will prevail depends upon the meaning of section 36 of article 5 of the Code, which is: "All appeals allowed from decrees or

orders of courts of equity shall be taken and entered within two months from the date of the decree or order appealed from, and not afterwards; unless it shall be alleged on oath that such decree or order was obtained by fraud or mistake, in which case the appeal shall be entered within two months from the time of the discovery of the fraud or mistake, and not afterwards."

In the instant cause the order for the appeal was accompanied by the affidavit of the appellant that the appeal is not made for the purpose of delay and that "the decree and order appealed from were both obtained by mistake, and that said mistake was only discovered within two months before the appeal was taken." The appellant, therefore, has made an allegation of mistake and of its discovery within the precise terms and period of the statute. The appellees, however, contend that an examination of the record will demonstrate that no mistake did in fact occur in the matter of the decree and order from which the appeal is taken. If this position be sound, an appeal could not be entertained under the section, unless the fraud or mistake be first determined affirmatively in an issue between the parties. This contention was specifically resolved against the appellees in *Oliver's Execs. v. Palmer & Hamilton* (1840), 11 G. & J. 137, which seems to be the first construction of section 14 of chapter 200 of the Acts of 1826, which is the statute first enacting this provision. In that case the affidavits were by one of the defendants and one of their solicitors, and the language was simply "that the decree within mentioned was obtained through mistake." 11 *G. & J.* 139. All the points made now were raised and considered in that case on the motion to dismiss the appeal. The court, speaking through Judge Archer, said:

"These affidavits are alleged to be insufficient to enable the appellants to prosecute their appeal, because they are but assertions of the parties' opinion and conclusion, upon a state of the case not disclosed, and without any explanation of the grounds upon which such opinion and conclusion were founded, without any specification of the supposed mistake,

134

and without even a suggestion of the nature of such supposed mistake, or its probable effect in the cause, and they are further contended to be insufficient, because only one of the parties has made the affidavit. * * *

"The Act of Assembly is so worded as to leave no doubt on our minds as to its true construction. The appeal is to be allowed after nine months, provided it is alleged on oath that it was obtained through fraud or mistake. The Act does not say, provided it be proved, but provided it be alleged, and the mode of establishing the allegation, is by an oath. The right exists upon the allegation and oath, and it is not a subject matter of controversy between the parties, unless we do violence to the Act of Assembly, for if the oath is to be controverted and denied, and so disallowed, the allegation and oath are discarded, which the Legislature say, shall entitle the party to an appeal. Appeals are thus limited and restricted, unless there is an allegation and oath of fraud or mistake. The abuse from such an exemption was supposed to be found in the requirement of an oath, that the mistake or fraud existed. The abuses anticipated to arise from this construction of the law will most probably be found to be imaginary. After the lapse of twenty-four years since the passage of the law, this is the first case where any party has sought at our hands the benefit of the law."

This seems such a clear exposition of the law, and so complete an answer to the arguments now made, that its quotation renders it unnecessary to labor the point further, when the subsequent decisions of this tribunal are found in full accord. *Edwards v. Bruce,* 8 Md. 387, 394, 395; *Contee v. Pratt* (1856), 9 Md. 67, 73 (here there was no verified allegation of fraud or mistake); *Johnson et al. v. Robertson* (1869), 31 Md. 476, 485; *Ashton v. Ashton* (1872), 35 Md. 496, 502; *United Lines Tel. Co. v. Stevens* (1887), 67 Md. 156, 158, 8 A. 908; *Miller's Equity Procedure,* pp. 442-444; *Alexander's Chancery,* 182.

The motion to dismiss the appeal must therefore be denied, and the case must be heard and determined on the record as of the time when the decree appealed from was passed, and

as if the appeal had been prosecuted within the usual period prescribed by law. *United Lines Telegraph Co. v. Stevens,* 67 Md. 158, 8 A. 908; *Ashton v. Ashton,* 35 Md. 502; *Johnson et al. v. Robertson,* 31 Md. 486; *Miller's Equity,* sec. 369; *Oliver's Ex'rs. v. Palmer,* 11 G. & J. 137; same case on merits, 11 G. & J. 426.

The amended bill of complaint was by Charles Harman, George W. Harman, Mollie Burnham, Sallie Early, Kate Ayre, Elijah Burnham, L. Jenkins Burnham, individually, and Kate Ayre, administratrix *pendente lite* of the estate of Mary C. Harman, deceased, against Johanna Bauer and Charles H. Bauer, her husband. These plaintiffs and defendants are all of the surviving children of Mary C. Harman, except John W. Harman, who is not a party, and Elijah Burnham and L. Jenkins Burnham, who are respectively the husband and son of Mary C. Harman's dead daughter, Annie Burnham. Mary C. Harman was the widow of George Harman, who died in September, 1918. She survived him until her death on July 5th, 1929, and left a purporting last will to which a caveat has been filed, and her daughter, Kate Ayre, has been appointed administratrix *pendente lite* before the filing of the amended complaint. Apparently the decedent left no real estate or personal property, but the plaintiffs charge that her daughter, Johanna Bauer, holds the title and possession of a ground rent and certain personal property by reason of a trust whereby the daughter was to have care of the property, and the mother was to enjoy the income therefrom for life and, after her death, the daughter was to divide the trust estate equally among the eight children of the said Mary C. Harman living at the time of the creation of the trust. The defendant, on the other hand, admits that she had agreed with her mother to pay her during life the income from the property involved, but asserts that, at her mother's death, she became its absolute owner by virtue of a contract which had for its fully performed consideration the care and keep of her mother during the latter's life.

The testimony offered was heard by the chancellor and was conflicting with respect to the main contention. There is no

controversy over some of the facts. Among these is that, on the death of the husband, he had money on deposit in two banks, and, in accordance with his desire, one deposit of $7,592 was divided equally among his eight children, and the other deposit of $4,832.66 was agreed to be allowed by the children, and was received and accepted by the wife, as her share of the husband's estate. The wife's portion was deposited in the joint names of the husband and wife, and on October 7th, 1918, the sum of $1,000 was withdrawn by the mother and invested in a $1,000 Liberty bond of the United States; and, on the same day, the mother closed this account and opened another by depositing in the same bank the residue of the account, amounting to $3,832.66, in her name in trust for self and Johanna Bauer, daughter, joint owners, subject to the order of either, the balance at death to belong to the survivor. There were no deposits made to this account, except the periodic accruals of interest, which were regularly withdrawn and paid to the mother during her life. There were some other drafts against this account during the mother's life, and none of these is material except that the sum of $875 was used by the defendant in 1923 to acquire in her own name the title to a ground rent of $50, issuing out of a property known as 2040 East North Avenue in Baltimore City. On the mother's death, after the payment of her funeral expenses and debts by the daughter, there remained to the credit of this account, as found by the chancellor, the sum of $2,000. The mother never owned any other property than the bank deposit she acquired on her husband's death, so her only possible estate would be the said residue of $2,000, together with the $1,000 Liberty bond, and the ground rent of $50, in the event that the *prima facie* ownership of the defendant is avoided and annulled. The chancellor held that the money drawn from the bank deposit was a gift from the mother to the daughter, and that therefore the title of the defendant to the ground rent was valid and absolute; but the decree adjudged and declared the $1,000 United States Liberty bond and the $2,000 residue of the bank deposit to be the property of the mother, which, at her death, passed as her

estate to her personal representative. Accordingly, it was decreed that the defendant pay the sum of $2,000 and deliver the Liberty bond to Kate Ayre, administratrix *pendente lite* of the estate of the mother.

A reading of the record will establish that the defendants have no cause for complaint in this decision. The decided weight of the testimony is that, while she was ninety-one years of age when she died and of unwieldy bulk, the mother was not dominated by any one and had the requisite capacity to make a valid deed or contract. On the other hand, the court agrees with the chancellor that the testimony satisfactorily establishes that the mother transferred and the daughter received the evidence of joint ownership in the bank deposit, and the possession of the bond, for the purpose and upon the express trust and confidence that the daughter would attend to the details of the investment, collect the income and pay it to the other for life, and distribute it at the mother's death in accordance with the direction of the mother. In fact, when the testimony offered on the part of the defendants is taken in its entirety to ascertain its net evidential value, it is not convincingly a refutation of this view. One of the most persuasive factors in the proof is the will of the mother. Johanna Bauer took her mother to the lawyer's office for its execution, and she was one of the attesting witnesses. The will is dated April 15th, 1920. At this date, and since her husband's death, the mother's sole property of every nature and kind was the Liberty bond of $1,000 and the original and then undistributed deposit in bank of $3,832.66, with $135.62 accrued due for one year's interest. The total value of her estate was, therefore, the principal sum of $4,832.66, and her will gave $1,500 to Johanna Bauer, the defendant, $1,000 to Sallie Early, a daughter, $500 to each of her other three daughters, and $5 to each of her three sons, or an aggregate of $4,015 in money, and the residue of her estate she gave to Johanna Bauer. And then she concludes with the convincing declaration that: "This will is made to supplement the action which I have taken in putting all the cash I have in banks for myself and Johanna

Bauer, subject to the order of either and at the death of either to the survivor. It is not to take the place of that action if the form in which it was made is legal and binding." In other words, the will was executed as an assurance that the trust she had created in the hands of her daughter should not fail by reason of its terms being in parol or of the legal title passing to the surviving daughter; and is, under the circumstances, a complete refutation of the defendant's claim of absolute antecedently transferred ownership of the entire fund, whether in the form of a deposit or an investment, in part, in a bond.

The court has considered the testimony which the defendants claim should have been excluded, but no reversible error has been found, since the testimony was not prejudicial, or was admissible, or was later given in evidence without objection. The defendant, Johanna Bauer, was called by the plaintiffs, and was asked several categorical questions, to which the reply was either yes or no. On the theory that, because the defendant had been called by the adverse party, the defendant could testify generally, the defendant was asked on cross-examination by her counsel to testify to matters which were not introduced in chief, but which were a part of defendant's case. So, this testimony was rightly excluded, because the cross-examination of the witness was properly confined to her testimony in chief, in view of the statutory disqualification of the defendant to testify on the call of the defense. Code, art. 35, sec. 3.

Finding no reversible error in the chancellor's rulings on the evidence and on the demurrer to the amended bill of complaint, and concurring in the conclusion reached on the evidence, the decree will be affirmed.

> *Motion to dismiss the appeal refused, with costs on the motion to the appellant, and decree affirmed, with other costs to be paid by Johanna Bauer, the appellant.*