## PETER MACH *v.* FRANK BARANOWSKI ET AL.

*Husband and Wife—Separation Agreement—Property Rights*
*—Effect of Reconciliation.*

A covenant by a husband, in consideration of a sum named and other considerations mentioned, that the property then held by the wife, or thereafter devolving on her, should be her sole and separate property, free from any rights in the husband, during her life or after her death, with full power in her to convey, charge, or will it as if unmarried, was, though contained in a separation agreement, not abrogated by a subsequent reconciliation and resumption of marital relations.

*Decided January 12th, 1927.*

Appeal from the Circuit Court of Baltimore City (FRANK, J.).

Bill by Peter Mach, in his own right and as administrator of Josepha Mach, deceased, against Frank Baranowski and

others. From a decree dismissing the bill, plaintiff appeals. Affirmed.

The cause was argued before BOND, C.J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Louis Mitnick,* for the appellant.

*Paul M. Higinbothom,* with whom were *Curran & Leach* on the brief, for the appellees.

PATTISON, J., delivered the opinion of the Court.

Josepha Mach, the mother of the appellees, was first married to one Baranowski, who died in 1915, leaving his wife and the appellees, two sons and one daughter, surviving him.

At the time of his death, he and his wife Josepha held certain leasehold and fee simple properties, as tenants by the entireties, which they had acquired by their joint labor and economy. The leasehold property is on Broadway in the City of Baltimore, and runs back to Regester Street, and is known as 727 and 729 South Broadway and 724 and 726 Regester Street. It is this property that is involved in these proceedings.

On October 16th, 1916, Mrs. Josepha Baranowski married Peter Mach, the appellant. At the time of this marriage she was forty-nine years of age, and Mach, her husband, was twenty-five years of age. As shown by the evidence, Mach was without means and was, during the whole of his married life, cruel to and neglectful of his wife. He was frequently drunk, and at no time did he contribute much, if anything, to her support.

Shortly after their marriage, they moved to the shore property of Mrs. Mach, on Marley Creek, in Anne Arundel County, where they lived until March, 1917, when the property was sold by her, and a deed therefor was given to the purchaser, executed by Mrs. Mach and her husband, and the purchase money, four thousand five hundred dollars, was paid by check drawn to their order. This money was afterwards invested in a shore property on the Annapolis

Boulevard, in the name of Mach and his wife, as tenants by the entireties, and it was so held by them at the time of the wife's death.

On June 11th, 1919, Mach and his wife were living apart and, in view of the relation then existing between them, an agreement of separation was at that time executed by them, which, among others, contains the following pro-visions:

"Whereas certain differences have arisen between the said Peter Mach and Jozefa Mach, his wife, in conse-quence of which they have heretofore separated, and intend for the future to live apart; and whereas with a view to this change in their relation they desire to enter into such an arrangement as to their personal and property rights, as is hereinafter expressed.

"Now this Agreement Witnesseth, First, that the said Peter Mach in consideration of the premises and of the payment to him by his said wife the sum of eight hundred dollars ($800.00), the receipt whereof is hereby acknowledged, and of his duty to provide for said wife, and of the covenant on the part of his said wife hereinafter contained, hereby covenants with the said Jozefa Mach, his wife, her heirs, executors, ad-ministrators and assigns as follows:

"1.   That the said Jozefa Mach may at all times hereafter live separate from the said Peter Mach, and free from his authority, and that he will not hereafter endeavor to compel the said Jozefa Mach to cohabit with him or use any violence or restraint to her person or molest her in any way of living or interfere with her or her liberty, or prosecute any person for receiving or sustaining her or for having been instrumental in bringing about this separation.

"2.   That all the property of the said Jozefa Mach, real and personal, now held by her absolutely, jointly with her husband or subject to the marriage rights of the said Peter Mach, or which shall in any manner hereafter devolve on her or on the said Peter Mach in her right shall be her sole and separate property

wholly free from any rights of the said Peter Mach
during her life or after her death, with full power in
her to convey, assign, charge or will the same as if un-
married; and that the said Peter Mach shall not at any
time claim any right in any of the aforesaid property
as husband, widower, heir, next of kin, or successor;
and that the said Peter Mach will execute such deeds
or papers as from time to time may prove necessary or
convenient to enable the said Jozefa Mach, her heirs,
executors, or administrators to deal with the property
of the said Jozefa Mach as if she were unmarried.

"And the said Peter Mach does in further considera-
tion of the premises agree to transfer and assign to such
person as the said Jozefa Mach may designate the re-
tail liquor licenses issued to him for the premises No.
.. S. Broadway, and he does hereby grant, convey and
assign to the said Jozefa Mach, and he does hereby
relinquish and surrender to her all his right, title and
interest to and in the said saloon business the stock in
trade and the good will thereof, and he does grant and
assign to her and he does surrender and relinquish to
her all his right, title and interest to and in a certain
Ford automobile, now registered in his name."

The agreement also contains the covenants of the wife that
she would not molest her husband or attempt to compel him
to cohabit with her, or prosecute any one for having been
instrumental in bringing about the separation.  That she
would incur no liability on his account and would hold him
harmless upon any debt or liability incurred by her, and
would bring no suit to compel him to support her; that she
would not claim any interest in his property and would,
from time to time, execute any deed or paper, to enable him
to assign or dispose of any property, free and clear of any
right or interest she had therein.  The agreement then con-
cludes with the statement that "this settlement is intended
to be and is accepted by the parties hereto as a fair and
reasonable provision considering the means of the respective
parties and the facts which caused this separation."

The evidence, though conflicting, shows that Peter Mach and Josepha Mach, after the aforesaid agreement in 1919, again lived together and were living together at the time of her death, though at times during that period he would leave and return to her.

On March 19th, 1921, after the execution of the agreement of separation, by which Mach released all his right, title, and interest in her property, for the consideration therein mentioned, Mrs. Mach conveyed or assigned the leasehold property on Broadway and Regester Street to one Fred Welte, and he in turn, on the same day, conveyed or assigned said property to her "for and during the term of her natural life, and no longer, and after her death, to her children, Mary May, John Baranowski and Frank Baranowski, subject to the annual rent of one hundred fifty dollars."

The evidence discloses that Mrs. Mach had on a number of occasions suggested to Peter Mach, in the presence of her children, that she desired her two sons and daughter, the appellees, to have the leasehold property on Broadway and Regester Street, saying that it was the express desire of their father, her first husband, that they should have the benefit of that particular property, and on March 19th, 1921, the date of the aforesaid deeds, Mrs. Mach, with her two sons and her husband, Peter Mach, went to the office of the lawyer by whom the deeds were prepared, and there the deeds were executed in the presence of the appellant. Mach admitted that he went with his wife and her two sons to the office where it is said the deeds were executed, but he denied all knowledge of their execution, or the purpose of the visit to the office, and testified that he did not know of the existence of said deeds, until after the funeral of Mrs. Mach. It is, however, shown, we think, from the evidence of John and Frank Baranowski, who were with their mother and Mach when the aforementioned deeds were executed, that Mach not only knew and fully understood the purpose of their visit to the lawyer's office and what was done at such time, but that the same was done with his approval. If it were the wish and the intention of the wife and sons to conceal from Mach

the execution of said deeds, we know of no reason why they had him go to the office with them at the time of their execution, when his going was not necessary, as he in no way participated in the execution of those deeds.

After the death of Mrs. Mach the bill in this case was filed, asking, among other things, that the deeds mentioned be set aside, and that the property be declared to belong to the estate of the said Josepha Mach. The court, after hearing evidence upon the bill and answer filed thereto, dismissed the bill. It is from that order or decree that this appeal was taken.

It is contended by the appellant that the agreement of separation by which Mach released all his right, title, and interest in the property of his wife, for the consideration therein named, was avoided and annulled by the subsequent act of the parties in resuming their marital relations, and as a result thereof, their status or relation to each other thereafter was in all respects, including their property rights, the same as that which existed before the execution of the agreement. This being so, the conveyance of the property to Welte by Mrs. Mach, without his participation therein, and Welte's reconveyance to her of the property, "for and during the term of her natural life, and thereafter to her children," was, as claimed by him, in violation of his marital rights.

The general rule in cases of this character is, if the agreement amounts only to a contract of separation with provisions for the support and maintenance of the wife during such separation, and with or without other executory provisions in consideration of the separation, by the weight of authority it is terminated by the subsequent reconciliation and cohabitation of the parties, husband and wife. Note to *Dennis v. Perkins* (88 Kan. 425-28), reported in 43 L. R. A. 1219.

It is said in *C. J.* 30, page 1065, sec. 847: "As a general rule a contract of separation is deemed to be annulled, avoided, and rescinded, at least as to the future or as to executory provisions, by reconciliation and resumption of the marital relation, * * *. Strictly speaking, a contract of separation

is annulled and avoided, not solely, or necessarily as a matter of law, by a subsequent reconciliation, cohabitation, or resumption of the marital relation, but rather by the intentional renunciation of the agreement which the reconciliation and resumption of the marital relations sometimes evidences." *Dennis v. Perkins,* 88 Kan., *supra.*

The effect of the rule upon cases to which it applies may be modified or changed when it is shown that it was not the intention of the parties to the agreement that such reconciliation or resumption of the marital relation was to have the effect given it under the rule. The reconciliation or resumption of the marital relation is in itself evidence of an intention to abrogate the agreement, but it is not, in all cases, an abrogation of the agreement. The rule so stated, however, applies only to what are termed "mere separation agreements," and not to agreements containing a settlement of property rights based on independent considerations. As was said in *Garrett v. Kirtley,* 97 W. Va. 484, 40 A. L. R. 1222: "There seems to be a distinction between mere separation agreements and post nuptial settlements of property rights. If, in a separation agreement, there is a separation settlement of property rights based on independent considerations, and which may have been made had there been no separation, it appears not to be terminated as a matter of law, simply because the parties become reconciled and live together again. While reconciliation and resumption of marital relations and duties will abrogate the separation agreement so far as a consideration therefor consists in the agreement to live apart, the resumption of the marriage relations does not rescind a part of the agreement based on an independent consideration."

In the case before us, Mach, the appellant, for the sum of eight hundred dollars, and other considerations mentioned in the agreement of separation, covenanted with his wife that the property then held by her, or which would thereafter devolve on her, should be her sole and separate property, "wholly free from any rights of the said Peter Mach, during her life, or after her death, with full power in her to convey.

assign, charge or will the same, as if unmarried." This agreement was in the nature of a postnuptial contract or a settlement of property rights, based on an independent consideration, which might have been made had there been no separation, and unlike the provisions therein contained to live apart, neither to molest the other, was not, we think, abrogated by their reconciliation and the resumption by them of their marital relations.

The appellant, who brought nothing to the wife in his marriage to her, and, as we have said, contributed little to her support after marriage, found himself, after the death of his wife, in possession, and owner, of the shore property on the Annapolis Boulevard and other lots of land bought with the wife's money, which were held by him and his wife as tenants by the entireties, valued, it is said, at four or five thousand dollars. The Broadway property, which passed under the aforementioned deeds to the children, was valued at ten or twelve thousand dollars. It will thus be seen that our decision is not only consistent with the legal principle stated, but it is certainly equitable and fair to the appellant.

As we find no error in the court's action in dismissing the bill, the decree appealed from will be affirmed.

*Decree affirmed, with costs.*