COOPER, ETC. *v.* DAVIS ET AL.

[No. 7, September Term, 1961.]

*Decided October 10, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and SYBERT, JJ.

*G. Reynolds Ash* and *J. Gifford Scarborough* for the appellant.

*J. Wilmer Cronin* for the appellees.

HAMMOND, J., delivered the opinion of the Court.

This case turns on the validity of a parol partition of land between tenants in common. The administratrix and sole devisee of George F. Cooper, one of the tenants, brought a bill for accounting against Lester W. Davis, the other tenant, to discover the amount due Cooper for sand and gravel excavated from half the tract of land over a period of years.

In defense, the respondent pleaded and established to the satisfaction of the chancellor that there had been an oral agreement to divide the commonly owned parcel of ground, which had been executed and would, therefore, be recognized and enforced in equity. The transaction though sometimes referred to below as a sale was in effect and substance a voluntary partition.

Cooper and Davis, as tenants in common, owned a forty-four-acre tract of land in Cecil County adjoining a lot on which Cooper, a bricklayer, had built his house. Davis, who

is in the sand and gravel business, had acquired his undivided one-half interest in the land in January 1946. There was testimony that shortly thereafter he and Cooper entered into the oral agreement that Cooper was to become the absolute owner of the twenty-two acres next to his house (which because of this fact and its frontage on a public road was to him the more valuable half), and Davis was to become the absolute owner of the lower or easterly twenty-two acres, which were adjacent to other land owned by Davis and on which was a partially excavated sand and gravel pit. The division line was established by a survey. Davis had a writing drawn providing for the exchange of deeds to the respective halves which were described according to the survey. Cooper said there was no need to pay money to the lawyers (he had agreed to pay half the expenses of the voluntary partition), since he had agreed to the division, and when Davis had finished excavating his newly acquired half he would sell him the remaining twenty-two acres. The oral agreement further provided that Davis was to build a new road to the public highway which would serve both parcels of land and to divert the trucks hauling Davis' sand and gravel from an existing road running close to Cooper's house. After the oral agreement was reached, Davis set up a $200,000 washing plant which would not have been justified without a supporting supply of sand and gravel of at least one hundred acres—which Davis did not have without the twenty-two acres he got from Cooper. Davis built the new road at a cost to him of $3,000 and took out large quantities of sand and gravel from the middle of 1946 to Cooper's death in April 1954 and thereafter, until the summer of 1955 when Cooper's heirs caused him to stop.

Cooper could see the excavating operations from his house and he frequently visited the site and the plant; further, he permitted Davis to use water from other land he owned for the washing plant; Cooper did not keep any account of the quantities excavated nor did Davis, who treated the twenty-two acres he obtained from Cooper and the additional eighty acres adjacent to the washing plant as a unit. Cooper never asked Davis for payment of any kind, although some years after Davis began to excavate, when Cooper was old and in

need of cash, he said to his nieces, they claimed, he would sue Davis. Davis excavated to within ten feet of the line between his half and Cooper's half but did not dig at all on Cooper's side of the line.

Almost all of this testimony came in on cross-examination. It is contended that Davis should not have been allowed to testify as to transactions with the deceased Cooper under Code (1957), Art. 35, Sec. 3. It has been held that an adverse party who is cross-examined as to a transaction with a decedent has been "called to testify by the opposite party" and therefore his answers are admissible under the express exception to the prohibitions of the statute. *Heil v. Zahn,* 187 Md. 603, 606. The redirect examination was limited by the chancellor to matters which had been explored on cross-examination, and we find no error in the admission of Davis' answers on redirect. *Bauer v. Harman,* 161 Md. 131.

The testimony of Davis as to the oral contract was supported by other witnesses—the surveyor who established the division line in 1946 and Cooper's nephew who testified that soon after Davis had begun to excavate, he was employed to bulldoze part of Cooper's twenty-two acres. Cooper had shown him the dividing line and told him not to work on the other side because that belonged to Davis; he testified also that Cooper had told him he was going to dig test holes in order to be able to sell his retained twenty-two acres for the excavation of sand and gravel.

To prevail on his defense of ownership, Davis must have offered the same clear, definite and unequivocal proof of an executed oral contract as would have entitled him to specific performance as complainant. *Gough v. Crane,* 3 Md. Chancery 119; *Fett v. Sligo Hills,* 226 Md. 190, 194. We think the chancellor was justified in his finding that the proof met this test.

Voluntary partitions by tenants in common have long been facilitated by the courts.

At the common law before the Statute of Frauds, tenants in common could effect a parol partition by mutual transfers of exclusive possession of the respective newly created parcels: these transfers were considered to pass legal title to the

newly created tracts by livery of seisin. *Doctor v. Priest,* Cro. Eliz. pt. 1, p. 95, 78 Eng. Rep. 354; 2 *American Law of Property,* Sec. 6.19, pp. 87-8. In this country most courts of law have said or held that a parol partition when accompanied by exclusive possession of the respective tracts is not within the Statute of Frauds. Some have reasoned that a partition is not a sale of land but rather the segregation of the interests of the co-tenants. Others have presumed partition from exclusive possession by one tenant of a part of the premises for a considerable length of time. A state statute of frauds applying in terms only to a sale of lands was held not to include a partition. 2 Tiffany, *Real Property* (3rd Ed.), Sec. 469, pp. 298-300; 2 Corbin, *Contracts,* Sec. 413. Cases on the subject are collected in an annotation in 133 A. L. R. 476, and see 68 C. J. S. *Partition* Sec. 7 a (1).

Whatever the rule at law there is little, if any, disagreement in the decisions that equity will recognize and confirm an oral agreement to partition if it has been followed by overt acts which can be attributed only to individual ownerships of the lands occupied exclusively after the oral agreement of partition. A majority of the courts of equity deem exclusive possession of the allotted shares by the partitioning tenants sufficient part performance. "When co-tenants make a parol partition of the land among themselves, and each one takes exclusive possession of his own share thus allotted, it is settled that the statute of frauds does not apply, and a court of equity will confirm and enforce the division by its decree." Pomeroy, *Specific Performance of Contracts* (3rd Ed.), Sec. 121, p. 308. Tiffany, in the work and section cited above, agrees. 1 *Restatement, Contracts,* Sec. 196, says that an oral agreement by tenants in common of land to partition into separate tracts for each tenant ceases to be within the Statute of Frauds as to each tract when possession in severalty is taken in accordance with the agreement. The comment to this section is: "The requirement of action in order to render enforceable a contract within this Section is not so specific as that of Sec. 197; but mere oral evidence of the oral agreement is insufficient."

Sec. 197 says a purchaser or vendor may specifically en-

force an oral contract for the transfer of an interest in land if the purchaser with the assent of the vendor (a) makes valuable improvements on the land or (b) takes possession and also pays all or a portion of the purchase price.

2 *American Law of Property*, Sec. 6.19, pp. 90-1, defines the rules of courts of equity in this way:

> "The principle is established in equity that a parol partition followed by a change of position such as the making of improvements by a cotenant after he has taken exclusive possession of his part is binding by estoppel. Justice demands that the other cotenant be estopped from denying the validity of the partition as made and from seeking a partition by action because of the unfair result to the tenant who had so changed his position in reliance on the *de facto* partition. Many of these cases are worked out as specific performance of a partially executed contract." [1]

In *Johnson v. Long*, 174 Md. 478, the Court found that one Purnell, then deceased, who had owned real estate as trustee under his wife's will in common with himself individually, (1) had intended to partition the property between himself and the trust estate, (2) had in good faith attempted to effect that intention and had built substantial buildings on each parcel, and (3) believed he had effected partition and, therefore, that he, as trustee, owned the part allotted to the

---

1. The footnote to the statements quoted above gives this rationalization:

"In several of the cases the courts have treated the parol partition as a contract partially executed which will be specifically enforced because of the transfer of possession and change of position involved. The same results are reached on either theory, equity giving effect to the partition as made. In most such cases the parties obviously intend a completed partition, not a contract to partition later under which possession is taken by each of his part, and the implied contract is merely a device in equity to do justice, just as the estoppel is in the more numerous cases which enforce the partition on that theory. In England and several states, transfer of possession is sufficient part performance to take such cases out of the statute."

trust estate which was improved by a store he had built. Judge Offutt for the Court pointed out, seemingly with approval, the rules as to parol partition which have been referred to above, and said they did not apply since Purnell, acting in various capacities could not agree with himself and "the notion that Purnell agreed to partition the lot is a mere metaphysical abstraction," while holding that he was estopped from asserting any individual interest in or title to the store property and his testamentary trustee was likewise estopped. The Court affirmed a decree which had determined that the wife's trust estate had equitable title to the store and directed the conveyance of legal title to it to the trustee of that estate. See also *Sowers v. Keedy,* 135 Md. 448, 451.

In the case before us it is clear (a) that Cooper and Davis each took and maintained exclusive possession of his separate twenty-two acres, (b) that Davis paid part of the consideration for the partition by building the new road which was advantageous to Cooper by diverting traffic from his house and by providing a means whereby sand and gravel could, if he so desired, be transported from his twenty-two acres, and (c) that Cooper acquiesced in the building by Davis of a $200,000 plant which he would not have built unless he considered that he owned absolutely the twenty-two acres closest to the plant. Davis was induced to act as an absolute owner by Cooper, and if those who now stand in Cooper's shoes be allowed to repudiate his inducing representations, Davis would have changed his position and have done to his detriment the things he did—things he would not have done if he had not been led to believe he was an absolute owner. This would result in injury "amounting to fraud" because the parties could not be restored to their original positions, to use the classic words and reasoning of the cases on specific performance of parol contracts. *Jaworski v. Jaworski,* 202 Md. 1, 9-10, and cases cited; *Shives v. Borgman,* 194 Md. 29; *Semmes v. Worthington,* 38 Md. 298, 327.

The chancellor, having rightly determined that Davis held equitable title to the parcel he claimed, went further and decreed an exchange of deeds so as to vest legal title in Davis and confirm it in Cooper's devisee and her assigns. Neither

side had asked for this relief but neither complains of the chancellor having gone this far, and we see no reason why it was not appropriate relief, within the power of the court to grant on the facts proven. *Johnson v. Long, supra.*

*Decree affirmed, with costs.*