## GROSSMAN *v.* GROSSMAN

[No. 220, September Term, 1963.]

140

*Decided March 11, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Edward B. Rybczynski* for appellant.

*Sidney Blum* for appellee.

MARBURY, J., delivered the opinion of the Court.

A decree of the Circuit Court of Baltimore City dated June 4, 1963, awarded Harry C. Grossman an absolute divorce and

his wife Mildred L. Grossman the sum of $1500 and counsel fee of $500. Mrs. Grossman appeals from that portion of the decree which grants the divorce and the sum of $1500. A cross-appeal was filed on behalf of Mr. Grossman from that portion of the decree which required him to pay $1500 plus counsel fee and from a subsequent order requiring payment of the counsel fee in accordance with the prior decree.

The parties, a widow and widower, were married September 28, 1957, and Mrs. Grossman, together with a son (who soon thereafter married and moved) and a daughter then ten years old, moved into the established home of Mr. Grossman in Baltimore. The union proved unsuccessful, and both parties testified that many arguments ensued between them. One subject in particular which caused the strife concerned the care and treatment of the daughter of Mrs. Grossman by a previous marriage. The husband testified that he merely attempted to establish living habits which he felt reasonable for a child of ten. The wife's testimony was to the effect that she thought the standards he had established too strict and in fact unreasonable. Further testimony on this aspect of the rift was offered by Mr. Grossman's grown daughter in his behalf and by Mrs. Grossman's sister in her behalf, based upon observations these witnesses had made from many visits during the year the parties lived under the same roof.

On November 6, 1958, with the aid and advice of competent counsel on both sides, an agreement was signed by both Grossmans which provided generally that in consideration of receiving $20 per week for maintenance and support until she either remarry or die, Mrs. Grossman released all of her marital rights in her husband's real and personal property. Immediately thereafter Mrs. Grossman moved out of the house and established separate residence.

Shortly after this, Mr. Grossman began visiting his estranged wife at her home, bringing to her the money due under the post-nuptial contract. Quite often during these visits sexual intercourse would take place between the parties, but nearly always afterward the old disputes which had eventually led to the separation would again ensue. The couple did not, however, ever remain together any considerable length of time, although

on at least one occasion Mrs. Grossman admitted she took a ride with Mr. Grossman and his daughter to Pennsylvania, and on several occasions spent some time, but not overnight, in his home. The visits continued and payments were made by Mr. Grossman until about March of 1960 when, according to the appellant, she demanded that he either reconcile with her or stop visiting. The appellee claims that he had asked her to come back and live with him, but that she refused, saying according to him "as long as she's got a sucker like me and $20 a week, she wasn't worrying about living with me; she wouldn't live with the best man alive, and that is the last time I saw her." At any rate, the payments stopped, and the first phase of this litigation took place. That was when Mrs. Grossman sued her husband in the People's Court of Baltimore City and got a judgment for back payments due under the agreement, which judgment was subsequently paid. There were two other suits for accrued payments based upon the same agreement, but the record is silent as to when they were filed. At the oral argument we were informed a judgment was entered against the husband in each of them, but instead of satisfying these, he appealed. These cases were consolidated and with the consent of the parties were heard by Judge Cardin concurrently with this suit by Mr. Grossman for divorce, and the effect of the decree was to reverse those judgments.

The appellant first contends that the chancellor was in error in granting Mr. Grossman an absolute divorce, based upon a suit which alleged desertion by the wife after her refusal to reconcile in March 1960. Like so many contested divorce actions, the testimony was in considerable conflict with respect to who made the offer to reconcile. The appellee argues that his conduct after the separation clearly indicated he was desirous of having his wife and her daughter return to his home, citing the frequent visits and the sexual intercourse in support of his attitude. Mrs. Grossman, on the other hand, contends that he gave her no choice but to leave when he told her, concerning her daughter, to "either give her away or get out of the house," all of which he denied. She also contends that the lower court erroneously construed the fact of sexual intercourse as a condonation by her of her husband's misconduct, if it be that, of

ordering her from the home. The record before us contains only the decree of the chancellor unaccompanied by oral or written findings, or opinion, but there is sufficient testimony which the court could have accepted to show that the husband offered to reconcile in March 1960 and that the offer was refused. Maryland Rule 886 a.

Neither of the parties is happy with the portion of the court's decree ordering the husband to pay the wife $1500. She claims $2600 is due as of March 1963, while the husband denies any amount is due and, as stated above, he has refused to pay two prior judgments. Also, Mr. Grossman contests the payment of counsel fees for Mrs. Grossman's attorney. Again, in the absence of an opinion of the lower court it is not clear just how the amount of $1500 was determined. Even counsel in this court were not certain, but there were two theories advanced. Judge Cardin may have applied $20 per week for a period extending from the alleged date of offer of reconciliation in March 1960 until the filing of the bill for divorce in September 1961. Another possibility is that the award was derived by taking the amount resulting from an allowance of $20 per week from March 1960 until the date of the decree in June 1963, but reducing this figure by an appropriate sum because Mrs. Grossman has been employed during most of this time. It is the theory of the cross-appellant, Mr. Grossman, that the court had concluded that the wife's subsequent refusal to reconcile terminated the agreement of November 6, 1958, and therefore no payments at all should have been required. The cross-appellee, Mrs. Grossman, on the other hand, urges that the agreement is valid, and that any question regarding its validity was made res judicata by the earlier actions in the Peoples Court, but that in any event, the agreement is not one for alimony, but rather a property settlement between the respective parties.

We think that the language used in the agreement supports this latter contention of the cross-appellee. The recital is rather general, but it is significant that the husband not only agrees to pay $20 a week until the wife dies or remarries, but also that the wife in paragraph 2 waives all claims against the husband and his estate given by statute or by virtue of the marriage "except as to the weekly payments herein provided for."

Further, paragraph 3 states that the parties covenant that "they, their *executors or administrators*, will at all times hereafter keep each other, *his or her heirs, executors and administrators* indemnified for all debts or liabilities heretofore or hereafter contracted or incurred by them * * *." (Emphasis supplied.) Again, paragraph 4 states that the parties "waive, release and surrender any and all marital rights that either may have" now or in the future, and further that they disclaim any right to participate in the distribution of the estate of either, including dower or statutory marital rights. Finally, paragraph 7 states that the covenants, stipulations and provisions of the agreement shall bind the parties and their heirs, personal representatives and assigns.

A separation agreement with some of the language substantially the same as that here was involved in the recently decided case of *Stevens v. Stevens*, 233 Md. 279, 196 A. 2d 447. However, in addition to the agreement there having been incorporated into the decree of absolute divorce in favor of the husband, it contained a provision that payments were to cease upon the death of the husband. We held in *Stevens* that the chancellor had the power to reduce the amount for the maintenance of the wife where the agreement provided for periodic payments as if ordinary alimony, but further held the facts there demonstrated no persuasive reasons for so doing. However, in the agreement of the Grossmans, there is no such cut-off clause. Payments which continue after the decease of the husband are clearly not alimony.

We think the language quoted and paraphrased above conclusive of the parties' intention that the agreement be a final property settlement and that even if Mrs. Grossman left the home wrongfully or later refused reconciliation, such misconduct would not vitiate the agreement. It was not alimony, and a court of equity has no right to modify a contract between the parties absent collusion, mistake or fraud. Under the decisions of *Mach v. Baranowski*, 152 Md. 53, 136 Atl. 34, and *Kenny v. Peregoy*, 196 Md. 630, 78 A. 2d 173, it seems clear that under the circumstances of this case the mere reconciliation and resumption of marital relations would not abrogate or rescind

the agreement as to property rights and support, which is not alimony.

The husband urges that to give validity to this agreement will be to open the door to possible fraud and collusion. We have, of course, long recognized the validity of such agreements, and a statute specifically so provides. Code (1957), Article 16, Section 28, and see generally, Myerberg, *The Practical Aspects of Divorce Practice* (2d ed.), Chapter VII, especially page 86. While we struck down a separation agreement which we found inequitable, without consideration, and to be an agreement to obtain a divorce, *Cronin v. Hebditch,* 195 Md. 607, 74 A. 2d 50, we find no facts in the instant case which call for invalidating this agreement.

We hold that the chancellor was not clearly in error in granting the absolute divorce, but that the computation of payments resulting in the $1500 award was incorrect. The agreement is valid, and arrearages should be computed at $20 per week for the full period since the last payments made under the agreement. See Rule S77 b. Finally, we find no error in the court's decree awarding counsel fee to the wife. *Tome v. Tome,* 180 Md. 31, 22 A. 2d 549; *Mulhall v. Mulhall,* 120 Md. 22, 87 Atl. 490.

> *Decree affirmed in part and reversed in part. Case remanded for further proceedings not inconsistent with this opinion. Costs to be paid by appellee.*