# DOUGLAS H. SANDS *v.* CATHERINE PERRY CONNER SANDS

[No. 831, September Term, 1973.]

*Decided June 19, 1974.*

The cause was argued before ORTH, C. J., and MORTON and GILBERT, JJ.

*Charles G. Page,* with whom were *White, Page & Lentz* on the brief, for appellant.

*Douglas R. Due* for appellee.

MORTON, J., delivered the opinion of the Court.

This is an appeal by Douglas H. Sands from an order entered by Judge John N. Maguire, sitting in the Circuit Court for Baltimore County, dismissing the appellant's petition for reduction of alimony.

It appears that the appellee, Catherine Perry Conner Sands, obtained a divorce from the appellant by a decree dated January 10, 1956. The decree provided that appellant was to pay the appellee "the sum of $191.66 per month as permanent alimony * * *." Another provision of the decree provided for custody and support for their minor children, who are now adults. Prior to the issuance of the decree, the parties had entered into an agreement dated November 15, 1955. Paragraph 3 of that agreement provided in part:

> "3. (a) Beginning with November 14, 1955, Husband will pay to Wife the sum of Three Hundred and Seventy-five Dollars ($375.00) per month, of which said sum One Hundred Ninety-one Dollars and Sixty-six Cents ($191.66) per month shall be for the *support and maintenance* of Wife, and One Hundred Eighty-three Dollars and Thirty-four Cents ($183.34) per month shall be for the support and maintenance of the minor children of the parties. The first of such payments shall be made on November 14, 1955, and ensuing payments shall be made regularly on the 14th day of each month. (Emphasis supplied.)
>
> (b) It is understood and agreed that the provisions herein made for support and maintenance of Wife and the minor children of the

parties shall be net to Wife, and that any income taxes due thereon shall be paid by Husband. Wife agrees that, so long as the parties shall remain under the law of the State of Maryland as husband and wife, she will, upon the request of Husband, and without any cost or expense to her, make, execute and join with Husband in the execution of such joint individual income tax returns as shall be required to satisfy the Internal Revenue Statutes of the United States of America and the regulations promulgated thereunder, as well as any similar statutes, made and passed, or regulations adopted by the State of Maryland, to the end and intent that Husband may lawfully be responsible for only minimum taxes."

The chancellor below in construing the legal effect of paragraph 3 (a) concluded that "the language in the Separation Agreement was clear and definite in its terms and was a contractual obligation. It was not alimony and as the result was not subject to review. The petition for reduction of alimony is hereby denied, and as the result of this conclusion the petition to strike the order of Judge Menchine is also denied."[1]

In contesting the chancellor's conclusion, the appellant asserts that (1) "The mere existence of a binding separation agreement does not deprive the court of jurisdiction over alimony awarded in its decree"; (2) "The separation agreement * * * did not impose an obligation upon Mr. Sands to pay support and maintenance after the entry of the decree of divorce * * *"; and (3) "The award of alimony in the decree was in complete compliance with the agreement and is subject to the court's revision and control."

The field involving the distinction between so-called technical alimony and non-technical alimony has been

---

1. The reference to the order of Judge Menchine was necessary because the appellant, after filing his motion to reduce alimony, filed a petition to strike an order of Judge Menchine entered on January 29, 1968, without an accompanying opinion, granting the appellee's motion for summary judgment, apparently after appellant had filed a petition to reduce alimony.

plowed and replowed in the cases by the Court of Appeals and this Court, sometimes lightly, sometimes subtly, and sometimes confusingly. Any confusion or misunderstanding which might have resulted from the various opinions which have been rendered was certainly put asunder and hopefully ended with the in-depth analysis of the concept of alimony by Judge Powers in his opinion in *Simpson v. Simpson,* 18 Md. App. 626. There, it is made absolutely clear that unless an agreement between a husband and wife relating to support payments for the wife spells out and provides for every attribute or element which the definition of alimony requires, the support payments are a contractual obligation and not alimony. As defined in *Simpson,* at 628-629:

> "Alimony is a money allowance payable under a judicial decree by a husband at stated intervals to his wife, or former wife, during their joint lives or until the remarriage of the wife, so long as they live separately, for her support and maintenance. [Footnote omitted.]
>
> a. It must terminate on the remarriage of the wife.
>
> b. It must terminate on the death of the wife.
>
> c. It must terminate on the death of the husband.
>
> d. If the parties have entered into an agreement providing for payments which meet the required characteristics of alimony, the court may adopt the agreement in ordering the payment of alimony.
>
> e. Alimony ordered by the court is always subject to reconsideration and modification by the court in the light of changed circumstances.
>
> f. Payment of alimony may be enforced by the court by the exercise of its contempt power, including attachment and imprisonment of the person."

It is at once apparent that missing in the agreement

between the parties here are a number of crucial ingredients necessary for the support payments to reach the legal status of alimony. First, there is no provision that the payments terminate on the remarriage of the wife. Second, there is no provision that the payments terminate on the death of the husband. Third, there is no provision that the payments shall continue only as long as the parties remain separated.

Appellant argues that the decree of divorce superseded the agreement between the parties and that because the decree contained a provision for "permanent alimony" the payments provided for in the agreement cease to be contractual and become converted to alimony. Such an argument, in light of the facts, is untenable. It is perfectly evident that the reference to alimony in the divorce decree is the result of the prior agreement between the parties. As was stated in *Dickey v. Dickey*, 154 Md. 675, 678:

> "If * * * the allowance to the wife in the decree is the result of a previous agreement between the spouses and does not fall within the accepted definition of alimony, so that it would have been impossible for the chancellor to have allowed permanent alimony as the decree provides, then, notwithstanding the parties and even the court called it alimony, the allowance for the wife in the decree was not alimony, and a court of equity has no power to modify the decree as in the case of an award of alimony."

That the agreement was clearly made in contemplation of divorce is evident from paragraph 10, which provides: "That this Agreement may be incorporated in any decree which may be passed in the divorce proceedings referred to above, now pending in the Circuit Court for Baltimore County, in Equity." In the course of the testimony before the divorce examiner, the following colloquy occurred between Mrs. Sands and her attorney:

> "Q. Mrs. Sands, I show you an Agreement dated November 15, of this year, between Douglas H. Sands and Catherine Conner Sands, which purports

to be signed by your husband and by you, and acknowledged before Notaries Public by each of you, and ask you if that is the Separation Agreement which you and Mr. Sands executed?

A. Yes, it is.

Q. Under that you have settled the question of financial support, so far as you and your husband are concerned, is that correct?

A. Yes."

Thus, there is not an iota of evidence to support the contention of the appellant that the provision in the divorce decree was intended to, or did in fact, supersede the provision of the wife's support and maintenance found in the agreement.

We find no validity in the appellant's alternate contention that "the failure to specify a time during which payments to the wife must continue is a fatal defect in the contract unless it can be clarified in some such way as to make the obligation legally certain;" and that the only way to make it legally enforceable is to construe the provision of the agreement as alimony or hold that the provisions in the divorce decree superseded the agreement. From the authorities cited by appellant, his argument appears to narrow down to the proposition that the provision in the agreement for support and maintenance is unenforceable and void for vagueness.

We think a complete answer to this argument is found in the opinion of the Court of Appeals in *Sands v. Sands*, 252 Md. 137, where the Court had before it the construction of section (b) of paragraph 3 of the same agreement which is now before us. There, Judge McWilliams, speaking for the Court, stated at 138:

"On 15 November 1955 Sands and appellee entered into an agreement reciting the existence of 'great and irreconcilable differences' and an intention to provide for the 'support and maintenance' of appellee and the two boys. Each of the parties was represented in the negotiations by alert, able and

experienced members of the bar. The agreement itself is long, comprehensive and carefully drawn. In addition to the matters ordinarily found in such documents there are elaborate provisions for such things as the payment of mortgage installments, taxes, ground rent and fire insurance, life insurance and medical insurance premiums. Virtually nothing was overlooked."

We think this analysis of the agreement is unassailable. We can find no vagueness or ambiguity in the provisions of section (a) of paragraph 3. It is a contractual undertaking compelling the husband to pay the wife the sum of $191.66 per month for the balance of her natural life. That the obligation would terminate at the end of her life is clear since it was intended "for her support and maintenance" which obviously is not required upon her demise.

Once again we endeavor to lay to rest the distinction between alimony and the contractual obligation of a husband to make payments to a wife for her support and maintenance. However technical, artificial or illogical the difference may be, it is a distinction deeply imbedded in the domestic relations law of this State. Counsels in this area of the law are cautioned accordingly.

*Order affirmed.*
*Costs to be paid by appellant.*