## ANDREA S. SCHMERTZ *v.* KENNEDY B. SCHMERTZ

[No. 1213, September Term, 1975.]

*Decided September 15, 1976.*

The cause was argued before MORTON, GILBERT and LOWE, JJ.

*James J. Bierbower* for appellant.

*Michael T. Nalls,* with whom were *J. Willard Nalls, Jr.,* and *Nalls & Nalls* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

This is an appeal by the appellant/wife from an order issued by Judge John J. Mitchell, sitting in the Circuit Court for Montgomery County, that "the alimony originally established by the agreement of the parties and adopted by this Court in its Decree of April 1, 1968, be * * * abated, pending further order of the Court * * *." The April 1, 1968, decree granted the appellant/wife a divorce a vinculo matrimonii from the appellee/husband and incorporated therein the provisions of a separation and property agreement between the parties dated September 18, 1967. On January 24, 1975, the appellee/husband filed a "Motion to Terminate Alimony Payments" and after a hearing before a domestic relations master, the chancellor signed the order terminating the alimony payments.

The appellant/wife presents two questions for resolution:

"1. Are payments in a Separation Agreement for the wife's support 'alimony' when she specifically waives alimony in the Agreement?

2. Are payments in a Separation Agreement for the wife's support 'alimony' when the payments are not limited to the period the parties live separately?"

Paragraph 4 of the agreement contains *inter alia* the following provisions:

"(b) until the Wife shall remarry following any divorce between the Husband and Wife, until the Wife shall die, or until the Husband shall die, whichever event shall first occur, the Husband shall pay to the Wife, as alimony for her support and maintainance [*sic*] the sum of Two Thousand Seven Hundred and No/100 Dollars ($2,700.00) per annum, payable in monthly installments of Two Hundred Twenty-Five and No/100 Dollars ($225.00), due on the first day of each month following the execution of this agreement;

(c) in the event of the death of the Husband before all obligations of his pursuant to this paragraph 4. shall have terminated, such ob-

ligations shall thereupon cease and shall not constitute a charge upon his estate."

Paragraph 16 of the agreement provides:

"Other than provided for in this Agreement, the Wife hereby waives alimony, support, maintenance, and alimony *pendente lite,* and agrees to file no action against the Husband in which she requests alimony, maintenance, support, and alimony *pendente lite* of any type whatsoever."

The appellant takes the position that the chancellor had no power to modify the agreement because the provisions for support in paragraph 4 cannot be construed as being technical alimony since the wife had expressly waived any right to alimony by the provisions of paragraph 16. The master and chancellor did not see paragraph 16 in that light and we think properly so. It is true, as appellant contends and the master in his report recognized, that it was rather strange to insert paragraph 16 in the agreement if the agreement in paragraph 4 did provide for alimony. Otherwise stated, why provide for alimony in paragraph 4 and refer to waiving alimony in paragraph 16. But our judicial function is not to wonder at the ways of legal draftsmen, but to ascertain, objectively, what the parties ultimately intended.

We think a fair reading of the expression in paragraph 16, "Other than provided for in this agreement, the Wife hereby waives alimony * * * " demonstrates that the parties believed that provision for alimony had been neatly packaged in paragraph 4 and that the wife would make no claim for alimony other than that provided for in paragraph 4. Whether paragraph 16 sought to prevent the wife from seeking an increase in alimony at some future time and whether it effectively accomplished this is not before us.

It is true, as appellant argues, that designating the payments called for in paragraph 4 as "alimony" cannot convert the payments into alimony if they were, in fact, contractual. And the fact that the wife testified that she understood the payments were "alimony" cannot accomplish

the conversion. Those factors would seem, however, to cast some light upon the true intention of the parties. In any event, we think a reasonable reading of paragraph 16 with paragraph 4, as well as paragraph 19,[1] compels the conclusion that the parties did not intend that the wife waived her right to alimony. Accordingly, we find no fault with the action of the chancellor in abating the payments called for in paragraph 4 pending further order of the court.[2]

Turning to appellant's second contention, this Court stated in *Sands v. Sands*, 21 Md. App. 659 (1974), at 662, that "unless an agreement between a husband and wife relating to support payments for the wife spells out and provides for every attribute or element which the definition of alimony requires, the support payments are a contractual obligation and not alimony." We there set forth the definition of alimony as articulated by Judge Powers for this Court in *Simpson v. Simpson*, 18 Md. App. 626 (1973), at 628:

> "1. Alimony is a money allowance payable under a judicial decree by a husband at stated intervals to his wife, or former wife, during their joint lives or until the remarriage of the wife, so long as they live separately, for her support and maintenance." [Footnote omitted.]
>
> a. It must terminate on the remarriage of the wife.
> b. It must terminate on the death of the wife.
> c. It must terminate on the death of the husband."

We found in *Sands* that the agreement between the husband and wife there under review failed to include "a number of

---

1. Paragraph 19 reads, in part: " * * * and the considerations mentioned herein shall be in full satisfaction and discharge of alimony, support and other claims and demands which might or could be made by the Wife for her maintenance and support."

2. See Ch. 849, Laws of 1975, which authorizes a modification of support payments called for in agreements entered into after July 1, 1976, whether they be deemed alimony or contractual payments.

crucial ingredients necessary for the support payments to reach the legal status of alimony. First, there is no provision that the payments terminate on the remarriage of the wife. Second, there is no provision that the payments terminate on the death of the husband. Third, there is no provision that the payments shall continue only as long as the parties remain separated."

As the appellee points out, the assertion that the agreement there under review did not contain a provision that the payments shall continue only so long as the parties remained separate was not essential to the decision and, upon reflection, we are of the opinion that it may have extended prior court holdings in an overbroad fashion.

The fact that the parties must live separate and apart is, of course, an essential ingredient or characteristic of alimony. Our Courts have consistently defined alimony as payments by the husband for the wife's support during their joint lives or until the wife's remarriage, so long as they live separately. *Simpson v. Simpson, supra.* While it has been held that an agreement providing for support payments to the wife by the husband must expressly provide that the payments are payable during their joint lives or until her remarriage in order to consider the payments alimony, it has not been a further requirement that the agreement specifically provide that the payments be made only so long as the parties remain separate and apart. This requirement has been apparently dispensed with because if it comes about that the parties cease to live separate and apart, it would appear to be their intention to abrogate the agreement under which they contracted to live apart and the obligation of the husband to make the payments called for in the agreement would be terminated. *Mach v. Baranowski,* 152 Md. 53, 58-59 (1927).

The agreement before us was predicated upon the parties living separate and apart. It is entitled "Separation and Property Settlement Agreement." It states that "the parties are living and have been living separate and apart * * *." It provides: "The parties shall continue to live separate and apart * * *." It clearly was intended that the agreement

should continue as long as the parties lived separate and apart. We are of the opinion, therefore, that the failure to state in paragraph 4, with specificity, that the payments would continue only so long as the parties lived separately is not a fatal flaw in the finding of the chancellor that the payments were alimony and not a contractual obligation of the husband.

*Judgment affirmed; costs to be paid by appellant.*