603 A.2d 1350

**Vasilios D. KAOURIS, Personal Representative of the Estate of Nikolaos D. Kaouris, etc.**

v.

**Cynthia KAOURIS.**

No. 949, Sept. Term, 1990.

Court of Special Appeals of Maryland.

April 8, 1992.

John S. Hyle (Jarvis and Hyle, on the brief) Ocean City, for appellant.

James W. Almand (Ayres, Jenkins, Gordy & Almand, P.A., on the brief) Ocean City, for appellee.

Argued before BISHOP and GARRITY, JJ., and JAMES S. GETTY, Judge (Retired), Specially Assigned.

BISHOP, Judge.

Pursuant to Md. Rule 8–304, this Court certified three questions to the Court of Appeals:

1.  Whether an Orphans' Court has jurisdiction to determine the validity of a marital settlement agreement, the interpretation of which is necessary for the Court to decide whether the surviving spouse has waived her right to be appointed as Personal Representative, to receive a family allowance or an elective share of the estate;

2.  Does an Orphans' Court have jurisdiction to determine whether such a waiver has occurred, where in order to make that determination, the Court would have to determine whether the waiver, included in a marital settlement agreement, is ineffective because of a material breach of the agreement by the decedent;  and

3.  Should the Court of Special Appeals entertain a motion questioning the jurisdiction of the Orphans' Court in cases that have been appealed first to a circuit court and now before the Court of Special Appeals from the judgment of the circuit court?

The Court, in *Kaouris v. Kaouris,* 324 Md. 687, 598 A.2d 1193 (1991) answered "yes" to the first two questions and "perhaps" to the third. The response to the third question is not pertinent to the appeal *sub judice.* The affirmative response to the first two questions required the case to be remanded to this Court in order that we respond to the issues raised in the original appeal:

I. Whether the Dead Man's Statute prohibited appellee's testimony that, after executing the marital settlement agreement, she and the deceased lived together as husband and wife for 16 months.

II. Whether the marital settlement agreement between appellee and the deceased precludes appellee's claim for the family allowance regardless of whether the appellee and the deceased lived together for 16 months after executing the agreement.

## FACTS

We adopt the facts as set out in the Court of Appeals opinion at 324 Md. 687, 710–14, 598 A.2d 1193.

Appellee Cynthia Kaouris married Nikolaos D. Kaouris, the decedent, in 1983. Approximately 16 months before their separation in November, 1988, while both were represented by counsel, they entered into a marital settlement agreement. That agreement, *inter alia,* provided that: (1) "The parties have agreed to separate and to live separate and apart without any cohabitation, and they have so lived continuously since the date of this agreement first above written." [9]; (2) they would have joint custody of the child born to the marriage; (3) the decedent would pay appellee $100.00 per week child support, $50.00 per week alimony, and provide health insurance coverage for the minor child; and (4) the parties would transfer certain personal and real property between themselves. The agreement also provided:

"14. Except as otherwise provided herein, each party hereby waives, releases and relinquishes unto the other all rights or claims of dower, curtesy, descent, inheri-

tance, distribution and all other rights or claims growing out of said marriage between them and each shall be forever barred from any and all right in the estate of the other, whether real, personal or mixed and whether now or hereafter acquired, and each will, upon request of the other party, execute good and sufficient release of dower or curtesy to the other spouse, her or his heirs, assigns or personal representatives or will join with the spouse or her or his assigns in executing any deed to any real property now or hereafter acquired or owned by the other spouse, all at the expense of the spouse so requesting. This paragraph includes, but is not limited to, rights and claims under the Property Disposition Act, section 8–201 et seq., Family Law Art., Ann. Code of Maryland, and all amendments thereto."

The decedent died, leaving a will appointing appellant, Vasilios D. Kaouris, personal representative of his estate. Appellee did not contest his appointment; rather, she filed a claim for a family allowance [10] and an election to take her intestate share.[11] Appellant opposed both claims, raising, by way of defense, the marital settlement agreement and, in particular, appellee's waiver of rights in the decedent's estate. Relying on § 3–205,[12] he argued that, by executing the marital separation agreement, appellee forfeited her right to take an elective share. Following an evidentiary hearing, the orphans' court ruled against appellant as to the surviving spouse's allowance; it did not decide the propriety of appellee's spousal election. Appellant appealed directly to the Court of Special Appeals, pursuant to Maryland Code (1974, 1989 Repl. Vol.), § 12–501 of the Courts and Judicial Proceedings Article.[13]

Inasmuch as the parties had never been divorced, at issue before the orphans' court was whether, by virtue of her execution of the marital property agreement, appellee had waived her right to the spousal allowance and/or elective share. It was for that purpose—its bearing on the answer to that question—that appellant offered the

marital property agreement in the orphans' court. That court determined, presumably after it, construing the agreement, concluded that the provisions of the agreement were interrelated, that the agreement was void because appellee and the decedent had never separated as the agreement contemplated.

[9] The remainder of the provision provides:

"Neither party shall interfere with or molest the other, nor endeavor in any way to exercise any marital relations with the other or to exert or demand any right to reside in the home of the other. Each party shall be free to go his or her own way as fully and to the same extent as if they had never been joined in matrimony. [E]ach may reside at such place or places as he or she may select and each may, for his or her separate use and benefit, conduct, carry on and engage in any business, profession, or employment which to him or her may seem advisable."

In point of fact, the parties had not separated when they executed the agreement.

[10] Maryland Estates and Trusts Section 3–201 provides, in pertinent part: "The surviving spouse is entitled to receive an allowance of $2,000 for personal use. . . ." Effective July 1, 1991, Ch. 645, Laws 1991 amended this section to increase the amount of the family allowances. The allowance for the surviving spouse is now $5,000.00. *See* § 3–201(a) (1991 Cum.Supp.).

[11] Section 3–203(a) provides:

Instead of property left to him by will, the surviving spouse may elect to take a one-third share of the net estate if there is also a surviving issue, or a one-half share of the net estate if there is no surviving issue.

[12] Section 3–205 provides:

The right of an election of a surviving spouse may be waived before or after marriage by a written contract, agreement, or waiver signed by the party waiving the right of election. Unless it provides to the contrary, a waiver of "all rights" in the property or estate of a present or prospective spouse, or a complete property settlement entered into after or in anticipation of separation or divorce, is a waiver of any right to his family allowance as well as to his elective share by each spouse in the property of the spouse, his right to letters under § 5–104, and is an irrevocable renunciation of any benefit which would pass to him from the other by intestate succession, by statutory share, or by virtue of the provisions of a will executed before the waiver or property settlement.

[13] That section provides:

A party may appeal to the Court of Special Appeals from a final judgment of an orphans' court. However, if the final judgment was given or made in a summary proceeding, and on the testimony of witnesses, an appeal is not allowed under this section unless the party desiring to appeal immediately gives notice of his intention to appeal and requests that the testimony be reduced to writing. In such case

the testimony shall be reduced to writing at the cost of the party requesting it.

## I.

■ Maryland Courts and Judicial Proceedings Code Ann. (1989 Repl.Vol.):

Sec. 9–116. Dead Man's Statute.

A party to a proceeding by or against a personal representative, heir, devisee, distributee, or legatee as such, in which a judgment or decree may be rendered for or against the, or by or against an incompetent person, may not testify concerning any transaction with or statement made by the dead or incompetent person, personally or through an agent since dead, unless the testimony of the dead or incompetent has been given already in evidence in the same proceeding concerning the same transaction or statement.

Critical to the outcome of this case before the Orphans' Court and to our response to Issue II, is whether the Orphans' Court erred in admitting appellee's testimony contrary to the dictates of the Dead Man's Statute. Appellant contends that appellee should not have been permitted to testify to any transactions she had with or statements made by, the deceased Nikolaos D. Kaouris. Appellant argues that she did so testify and that this testimony violated the Dead Man's Statute, *supra*. Appellee apparently does not dispute that appellee's redirect testimony did violate the statute. We agree that it did. Appellee contends, however, that appellant's cross examination of appellee activated the exception to the Dead Man's Statute that the statute applies unless the witness is "called to testify by the opposite party." *Heil v. Zahn*, 187 Md. 603, 605–06, 51 A.2d 174 (1947). The trial court in *Heil* struck the answer to a question asked on cross examination that violated the statute. The Court reversed stating:

We think the answer was responsive to the question and was admissible and should not have been stricken out. It would seem that a witness cross-examined by the opposite party is "called to testify by the opposite party". In any

event when the opposite party asks a question he not only invites but requires an answer and thereby waives any right to object to a responsive answer.

*Id.* at 606, 51 A.2d 174.

Appellee further cites *Cooper v. Davis*, 226 Md. 371, 174 A.2d 144 (1961) for the proposition that once the forbidden issue is raised on cross-examination, redirect examination of the witness on the matter raised during cross-examination is permissible. In referring to the disputed testimony the *Cooper* court observed at page 375, 174 A.2d 144:

Almost all of this testimony came in on cross-examination. It is contended that Davis should not have been allowed to testify as to transactions with the deceased Cooper under Code (1957), Art. 35, Sec. 3. It has been held that an adverse party who is cross-examined as to a transaction with a decedent has been "called to testify by the opposite party" and therefore his answers are admissible under the express exception to the prohibitions of the statute. *Heil v. Zahn*, 187 Md. 603, 606 [51 A.2d 174]. The redirect examination was limited by the chancellor to matters which had been explored on cross-examination, and we find no error in the admission of Davis' answers on redirect. *Bauer v. Harman*, 161 Md. 131 [155 A. 312].

Both *Heil* and *Cooper* involved the Dead Man's Statute contained in former Article 35, § 3 of the 1939 Code. The current statute embodies virtually the same exception. The current statute prohibits the witness from testifying concerning any transaction with or statement made by the dead person "unless called to testify by the opposite party, or unless the testimony of the dead or incompetent person has been given already in evidence in the same proceeding concerning the same transaction or statement." The former statute provided "unless called to testify by the opposite party, or unless the testimony of such testator ... shall have already been given in evidence...."

The exception has been iterated in many appellate decisions. *DeMarco v. DeMarco*, 261 Md. 396, 400, 275 A.2d

471 (1971); *Taylor v. Mercantile–Safe Deposit & Trust Co.*, 269 Md. 531, 538–39, 307 A.2d 670 (1973); *Stacy v. Burke*, 259 Md. 390, 406–07, 269 A.2d 837 (1970) (cross-examination of witness in regard to documents not admissible under the statute renders them admissible); *Cooper v. Davis, supra.*

In *Heil v. Zahn, supra,* the following exchange took place on cross examination:

Q. You say you bought groceries, did the cleaning and scrubbing about the House? A. I did.

Q. And you were perfectly satisfied with the arrangements and conditions under which you were working for those six years, were you not? A. I was not.

Q. Were you compelled to stay there for any reason whatsoever? A. You heard the note, loyalty, I am loyal.

Q. Other than loyalty, that was the reason you stayed, was it? A. No, I was promised more when he was able to pay it.

The last answer clearly indicated a promise by the decedent. The trial court sustained an objection and ordered that the answer be stricken. The Court of Appeals reversed based on the cross-examination exception contained in the statute.

The cross-examination of appellee in the case *sub judice* was similar to the cross-examination in *Heil.* Appellee was cross-examined in detail about almost every specific part of the agreement except that part that had to do with appellee and appellant living together. Appellee was asked repeatedly whether the husband complied with each section of the agreement. Each question produced an affirmative reply. It would be grossly unfair to permit appellant to question appellee about the terms of the agreement that would produce responses favorable to appellant and then prohibit appellee from asking questions pertaining to those issues unfavorable to appellant. We hold that the cross-examination in the case *sub judice* clearly satisfied the

exception contained in the statute, as that exception has been applied and explained by Maryland courts.

In addition, appellant raised no objection to any of the redirect examination of appellee which brought into evidence the exact nature of the relationship between appellee and appellant before the actual separation occurred. It is possible that appellant assumed that he had a continuing objection and, since appellee did not raise this as an issue, we have assumed that it was preserved below. Our review of the record would confirm that the presiding judge of the Orphans' court indicated to appellant that the judges understood his objection and that he would have a continuing objection, although the words, "continuing objection" were not used by the presiding judge.

## II.

■ Appellee contends, as the Orphans' Court found, that the agreement between the decedent and appellee was a nullity at the time of decedent's death because appellee and decedent did not separate following the execution of the agreement, but rather continued to live together as husband and wife for approximately 16 months thereafter. We do not agree.

In *Mach v. Baranowski,* 152 Md. 53, 136 A. 34 (1927), the parties, while living apart, executed an agreement providing, *inter alia,* that, in consideration of $800 paid to the husband, all the property held jointly, or subject to his marriage rights, would be the sole and separate property of the wife, with full power on her part to convey the property, as if unmarried. After the execution of the agreement, the husband and wife lived together again and were living together when the wife died. The husband then filed suit to set aside a deed the wife had executed conveying certain real estate to her children from her first marriage. The agreement of separation was avoided and annulled, the husband argued, by the subsequent act of the parties in resuming their marital relations, and the transfer of the

property to the wife's children was, therefore, contrary to the husband's marital rights. The Court of Appeals held the agreement of separation was effective to waive the husband's rights in the property, notwithstanding the fact that the parties had lived together after executing the agreement. The Court explained that there are two distinct types of separation agreements: "mere separation agreements," and agreements containing a settlement of property rights based on independent considerations. With regard to mere separation agreements, the Court explained that "[a]s a general rule a contract of separation is deemed to be annulled, avoided, and rescinded ... by reconciliation and resumption of the marital relation," however, the pivotal consideration is the intention of the parties with regard to the agreement. *Id.* at 58, 136 A. 34. While "[t]he reconciliation or resumption of the marital relation is in itself evidence of an intention to abrogate the agreement, ... it is not, in all cases, an abrogation of the agreement." *Id.* With regard to separation agreements containing a settlement of property rights based on independent considerations, the Court explained:

[These agreements] appear[ ] not to be terminated as a matter of law, simply because the parties become reconciled and live together again. While reconciliation and resumption of marital relations and duties will abrogate the separation agreement so far as a consideration therefor consists in the agreement to live apart, the resumption of the marriage relation does not rescind a part of the agreement based on an independent consideration.

*Id.* at 59, 136 A. 34. *See also, Brees v. Cramer*, 322 Md. 214, 221, 586 A.2d 1284 (1991) ("Where one breaches a provision in a marital settlement agreement which is not dependent upon other provisions, enforcement of the other provisions is uneffected"). The Court then characterized the agreement before it as a contract or a settlement of property rights based on an independent consideration and concluded it was not, therefore, abrogated by the reconciliation and resumption of marital relations.

Appellee attempts to distinguish *Mach* on the grounds that the agreement in this case is "premised on the parties' separation." "There is no stated separate, independent consideration, monetary or otherwise," appellee argues, "for Appellee's transfer of her interest in the marital home to her husband. Nor is there any separate independent consideration flowing to Appellee for her relinquishment of statutorily established property and marital rights." Contrary to appellee's assertions, it is clear the agreement is not premised on the parties' separation and that the parties intended the agreement to be a final and complete settlement of their property rights based on independent consideration. The agreement stated:

[I]t is the desire of the parties hereto to make a full and complete settlement of the property now owned by them and which may be hereafter acquired by them[.]

Moreover, the agreement divided the parties' property, including a business, real estate, motor vehicles, wearing apparel, personal ornaments and other personal property. Reconciliation and the resumption of marital relations does not affect the validity of such an agreement. *Mach*, 152 Md. at 59, 136 A. 34.

Furthermore, even if the agreement were, as appellee contends, premised on the separation of the parties, *Mach* explains that reconciliation and the resumption of marital relations is only evidence of an intention to abrogate the agreement. Except for the provision stating that the parties agreed to live separate and apart, appellant complied with the requirements of the agreement in every respect: he paid alimony and child support (inclusive of the period during which the parties were living together); he maintained health insurance coverage on appellee and the parties' child; and he conveyed to appellee a Plymouth Voyager and maintained automobile insurance coverage on it. Appellee also complied with the agreement: she conveyed the family home to the decedent, and she delivered to him title to an Oldsmobile station wagon. Because it is clear, under the facts of this case that the parties did not intend to

abrogate the agreement, the agreement would remain valid even if it were, as appellee argues, premised on the parties' separation.

In *Kenny v. Peregoy*, 196 Md. 630, 78 A.2d 173 (1951), the parties entered into an agreement that provided, *inter alia*, that the husband would not claim any right to a particular parcel of property as husband, widower, heir, next of kin or successor. After the agreement was executed, the parties separated and remained apart for three months but then reconciled for two months during which time they shared the same bedroom. The husband then asked the wife to reconvey the parcel back to their joint names as tenants by the entireties. She refused and the parties began occupying separate bedrooms in the same house. The parties were granted a divorce and the wife was awarded alimony. After the decree was entered, the wife left the house and did not return. When the wife died eleven years later, the husband filed a petition to have the aforementioned agreement declared null and void and to receive the legal share of the wife's estate. The executor of the estate claimed that by virtue of the agreement, the appellee had no right or interest in the estate of the deceased. The chancellor found the agreement was rescinded in *toto* by the parties upon reconciliation and decreed the agreement was null and void. Relying on *Mach*, the Court of Appeals reversed and explained:

> In the agreement now before this Court, both the husband and wife renounced all rights in all property of the other as husband, widower, wife, widow, "heir, next of kin and successor." This was a mutual release of the rights of each as heir, next of kin or successor in the other's property and was effective as of the date of the signing of the agreement. The appellee claims that this agreement was annulled in May, 1934, when the parties went back to live together and further in September, 1934 while the parties were still living together, when the wife filed a bill of complaint in which she demanded alimony[.]

\* \* \* \* \* \*

In the case now before this Court, the rights in the estate of the surviving spouse are clearly and expressly waived by the agreement.

*Id.* at 638–39, 78 A.2d 173.

In *Grossman v. Grossman*, 234 Md. 139, 198 A.2d 260 (1964), the uncontroverted facts were that the parties signed an agreement whereby the wife released all of her marital rights in her husband's real and personal property in consideration of $20 per week. Shortly thereafter, the husband began visiting his estranged wife to bring her the money due under the contract and quite often during these visits the parties would engage in sexual intercourse. Eventually, however, the visits and the payments stopped and the wife filed a claim to enforce payments accrued under the agreement. The Court of Appeals held the agreement was valid and that the wife was entitled to arrearages despite the resumption of marital relations.

We think ... [the agreement is] conclusive of the parties' intention that the agreement be a final property settlement.... Under the decisions of *Mach v. Baranowski*, 152 Md. 53, 136 Atl. 34, and *Kenny v. Peregoy*, 196 Md. 630, 78 A.2d 173, it seems clear that under the circumstances of this case the mere reconciliation and resumption of marital relations would not abrogate or rescind the agreement as to property rights and support, which is not alimony.

*Id.* at 144–45, 198 A.2d 260.

More recently in *Frana v. Frana*, 12 Md.App. 273, 278 A.2d 94 (1971), this Court again held that the continued cohabitation of the parties from the date of the execution of a separation agreement did not abrogate the agreement. In that case, the husband and wife continued to cohabitate for about a month, as man and wife, after the agreement was executed, until the wife sailed for England. That same year, the wife returned to this country and the parties went to their former home. The parties continued to occupy the same house for about another two months and then the

husband left the home. In the suit that followed this Court upheld the validity of the separation agreement:

> To hold that the parties' cohabitation immediately following the execution of the agreement of April 28, 1969 terminated the agreement does injury to the intention of the parties; nor are we persuaded that the wife's return from England on October 4, 1969 constituted such a reconciliation as would abrogate the agreement as a matter of law.
>
> \*     \*     \*     \*     \*     \*
>
> [T]he continued cohabitation of the parties ... was not under the totality of the circumstances a reconciliation so as to abrogate the agreement.

*Id.* at 279, 284–85, 278 A.2d 94.

Based on the foregoing authority, we hold that the agreement between the decedent and appellee was valid at the time of the decedent's death.

JUDGMENT OF THE ORPHANS' COURT FOR WORCESTER COUNTY REVERSED AND CASE REMANDED TO THAT COURT FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.